The plaintiff has appealed from a judgment for the defendants in a summary process action seeking possession of the leased premises for nonpayment of rent. The only issues raised are (1) whether a default occurred in payment of the rent and (2) whether the landlord effectively exercised its option to terminate the lease prior to the time the tenants made a tender of the delinquent rent.
The subordinate facts are not disputed. The defendants were in possession of premises used as a beauty parlor in a shopping center under a ten-year written lease with the plaintiff's predecessor in title. The lease was to expire May 31, 1979, but the defendants exercised their option to renew the lease for an additional five-year period. The lease provided that the rent for the renewal term would be calculated upon the basis of a cost-of-living index to be issued by the United States department of labor for June, 1979. On *Page 821 
May 1, the plaintiff notified the defendants by letter that the amount of the increased rent beginning June 1 could not be determined until later when the index had been published, and that the plaintiff would send notice of the increase, which would be retroactive to the commencement of the renewal term. On August 14, the plaintiff sent a letter stating that the new rental payment would be $1273.80 starting on September 1, and requesting that the additional rent for June, July and August, in the total sum of $1841.40, be forwarded. Soon after receipt of this letter the defendants spoke about the rent increase to a representative of the plaintiff who was employed as assistant manager of the shopping center where the leased premises were situated. He advised them that he had no authority to negotiate and that the defendants would have to contact the New York office of the plaintiff.
On September 5, the defendants sent a letter to the plaintiff in New York expressing concern about the amount of the rent increase. The next day they received a letter from the plaintiff dated September 4 stating that unless the rental payments as requested were made by September 11, the matter would be referred for legal action. On September 7, the defendants wrote the plaintiff that they were waiting for a reply to their previous letter, which had crossed in the mail with the plaintiff's letter, but that they would pay the increased rent in full once a reply was received. A check for $660, the amount of the monthly rent under the original term of the lease, was enclosed. On September 11, the plaintiff responded that the matter had been referred to its attorney.
On September 13, a notice to quit was served on the defendants demanding that the premises be vacated on September 21. On the following day, September 14, the attorney for the plaintiff sent a letter to the attorney for the defendants returning their check and *Page 822 
stating that the plaintiff was proceeding with the summary process action. The letter closed, however, as follows: "My client had no objection to rewriting the lease with the increased rent, but at this point the only thing that stands in the way is money. Please take this up with your client and advise."
On September 19, the defendants sent a check to the plaintiff in payment of the full amount of rent due for June, July, August and September at the increased rate. On September 20, the plaintiff's attorney, in another letter to the defendants' attorney, stated that his letter of September 14 was in error and that the plaintiff intended to proceed with the summary process action. Some further correspondence ensued between the attorneys for the parties concerning a new lease or an extension, but no agreement was reached. The defendants' check for the delinquent rent was returned, and the plaintiff began this action.
Although the lease does not expressly provide for the situation which arose here where the renewal rent for the months of June, July, and August could not be determined until some time after it was payable, we have concluded that the plaintiff was within its rights in insisting that it be paid within the time allowed by the lease for payment of the September rent. The lease provided that the renewal term rent should be paid in equal monthly installments on the first day of each month. The default clause made the failure of a tenant to pay the rent, or any other monetary payment, within ten days after its maturity, a breach of the lease entitling the landlord to terminate it. The plaintiff's letter dated september 4 demanding payment by September 11 was within the authority granted to the landlord by the terms of the lease.
We agree with the trial court, however, that under the circumstances of this case the failure of the defendants to make payment within the time *Page 823 
permitted does not warrant termination of the lease. It is elementary that a court of equity, even in the absence of fraud, accident or mistake, may relieve against a forfeiture resulting from the breach of a covenant to pay rent upon payment or tender of all arrears of rent with interest.[1] Thompson v. Coe, 96 Conn. 644, 655, 115 A. 219 (1921). Equity may intervene where the delay has been slight and the loss to the lessor small in order to avoid a substantial hardship upon the tenant. Nicoli v. Frouge Corporation, 171 Conn. 245, 247,368 A.2d 74 (1976). Now that we have abandoned our former rule that equitable defenses are unavailable in a summary process action, the trial court could properly rely upon these principles. Mark I Enterprises v. Sendele, 37 Conn. Sup. 569,427 A.2d 1352 (1981); Steinegger v. Fields, 37 Conn. Sup. 534,425 A.2d 597 (1980).
It should be noted that the defendants at no time refused to pay the increased rent. Their reply to the plaintiff's letter of September 4 stated that the rent would be paid as soon as the plaintiff responded to their previous letter in which consideration of a lower rent because of economic hardship had been requested. This letter of the defendants, enclosing a payment of $660, was received by the plaintiff before expiration of the deadline of September 11 established for payment of rent which had fallen due. The plaintiff's response was to notify the defendants that the matter had been referred to its attorney. The attorney caused a notice to quit to be served on the defendants on September 13, but on the following day he wrote a letter indicating that his client was willing to have the defendants continue their occupancy at the increased rental. This letter might reasonably be *Page 824 
understood as an invitation to further negotiations. It was not until September 20, the day after the defendants had sent a check in payment of the rent in arrears, that the plaintiff reverted to the position that it would proceed with eviction.
It appears from this recital that the plaintiff never had any good reason to believe that the defendants would not or could not pay the rent if it were insisted upon unequivocally. It was not unreasonable for the defendants to delay payment until they had received the normal courtesy of a reply to their request for a lower rent. The first letter from the plaintiff's attorney indicated that further negotiations might take place. Payment was made as soon as the tenants realized that the landlord insisted upon the full amount of the increase, the day before the plaintiff's attorney formally terminated negotiations by his letter. The situation is clearly one where equitable principles would excuse the technical default in the payment of the rent in order to avoid a forfeiture.
Apart from equity, the failure to pay the rent within the time permitted would not by itself terminate the lease. Mayron's Bake Shops, Inc. v. Arrow Stores, Inc., 149 Conn. 149, 156,176 A.2d 574 (1961). Some unequivocal act by the plaintiff showing that it had exercised its option to terminate was necessary. Id.; Chapel-High Corporation v. Cavallaro, 141 Conn. 407, 411,106 A.2d 720 (1954). Service of the notice to quit on September 13 would constitute such an act. The letter from the attorney on the very next day negated the effect of the notice to quit, however, at least until the further negotiations which that letter invited had terminated. The tender of full payment of the rent on September 19, before the plaintiff declared the negotiations closed, barred the plaintiff from proceeding with the forfeiture of the lease. Mayron's Bake Shops, Inc. v. Arrow Stores, Inc., supra. "The rule is well established ... that a *Page 825 
tender of the rent, after a breach of a covenant of payment, and before the declaration of a forfeiture by some unequivocal act on the part of the lessor, saves the lessee's rights and prevents the completion of the forfeiture by the lessor thereafter." Kovner v. Dubin, 104 Conn. 112, 120,132 A. 473 (1926).
 There is no error.
In this opinion DALY and BIELUCH, Js., concurred.