## CENTRIX MANAGEMENT COMPANY, LLC *v.* ESTEPHANIE VALENCIA ET AL. (AC 32625)

DiPentima, C. J., and Beach and Bear, Js.

Argued September 22—officially released December 20, 2011

*Robert Shluger*, for the appellant (plaintiff).

*Ralph S. Keen III*, for the appellees (defendants).

*Opinion*

BEACH, J. The plaintiff, Centrix Management Company, LLC, appeals from the judgment of dismissal of its summary process action against the defendants, Estephanie Valencia and Jose Sanchez. On appeal, the plaintiff claims that the trial court erred by (1) finding that the subsequent acts and communications by the plaintiff rendered the previously unequivocal notice to quit equivocal and (2) sustaining the defendants' objections to questions regarding the parties' intentions. We affirm the judgment of the trial court.

The facts are undisputed. On October 1, 2009, the plaintiff as landlord and the defendants as tenants entered into a one year lease for a residential property in Newington. The defendants failed to pay rent before

the eleventh day of January, 2010. Thereafter, the defendants did not pay rent for February, March, April, and May, 2010. A notice to quit possession was served on both defendants on May 14, 2010, that required them to vacate the premises on or before May 21, 2010. The defendants failed to vacate the premises and continued to remain in possession. On June 26, 2010, the plaintiff served a five count complaint in which it alleged (1) nonpayment of rent as to both defendants,[1] (2) nonpayment of rent as to Sanchez, (3) no right or privilege as to both defendants and (4) no right or privilege as to Valencia.

On July 29, 2010, Valencia moved to dismiss the summary process action due to lack of subject matter jurisdiction, alleging that the plaintiff did not terminate the lease by unequivocal notice to quit as required by General Statutes § 47a-23. The court held a hearing on the motion, at which Valencia testified as follows. On June 24, 2010, John Deans, property manager for the plaintiff, called Valencia and left her at least one voice mail message. Valencia returned his phone call the same day, and she testified that Deans told her, "I don't want to evict you. We don't want to put you on the street, but let me help you. We can help you. We can make [an] agreement." Deans and Valencia met that day, and Valencia agreed to go to his office on June 30, 2010. At the meeting on June 30, Deans again stated that he did not want to evict her and that he wanted to avoid attorneys and court. He also gave her a phone number for an eviction prevention program. Additionally, Deans drafted a document in the presence of Valencia: "To Estephanie Valencia—Centrix agrees to forgive two months use and occupancy payments and will work with you to straighten out arrearage. You will pay July use & occupancy by July 15, 2010 [signed] J. Deans,

[1] The plaintiff alleged nonpayment of rent as to both defendants in counts one and five.

Estephanie Valencia." Valencia subsequently paid $840 for July use and occupancy pursuant to this document.

Deans testified at the hearing that he told Valencia on June 24, 2010: "I thought both of us were spending a lot of money on attorney's fees, and I didn't like spending all this money about something I didn't understand, and I thought that maybe we could get together and work out a settlement between us for this case if I could understand what was the—what was it all about." He also testified that on the same day, he told Valencia that he did not want to evict her and "we came to an agreement that she would come at a future date to my office and we would try to discuss settling the case, if we could reach a settlement rather than carrying this on and on and on." Deans testified that he could not remember if he repeated that he did not want to evict Valencia at the meeting in his office on June 30. Deans further testified that he told Valencia that he "wanted to get accomplished some kind of financial arrangement that we could then present to the court to settle the case." According to the testimony of both Valencia and Deans, at no time did Deans tell Valencia explicitly that the pending action was cancelled or withdrawn or that she was reinstated under a new lease.

At the conclusion of the hearing, the court issued an oral ruling in which it noted the testimony of Deans that he did not want to evict Valencia and the writing of June 30 that indicated that Deans would forgive two months use and occupancy payments. The court further stated: "The court is struck by the candor of Mr. Deans. He was a well intended landlord and exercised good judgment in trying to resolve a matter, but unfortunately he ran afoul of the very strict rules in summary process. And these actions clearly—there's a textbook action, which caused a previously unequivocal notice to quit to become equivocal. It's the acts and the deeds, however well intended. This action cannot proceed. The

motion to dismiss is granted, and [the] action's dismissed." The plaintiff filed a motion for articulation, which was denied. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court erred by ruling that the actions of Deans subsequent to service of the notice to quit rendered the previously unequivocal notice equivocal. Specifically, the plaintiff advances four grounds for its assertion that the effect of the notice to quit remained unequivocal even after Deans' acts. It was clear that: (1) the parties were trying to negotiate a settlement, (2) the pending eviction was continuing and was not being withdrawn, (3) the plaintiff's comment of " 'I don't want to evict you' " was stated during negotiations and (4) the writing of June 30 did not reflect fully the issues that were discussed on June 24 and 30, and because of Valencia's financial difficulties, they could agree only on payment for July use and occupancy. We disagree.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to deny] . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Caruso* v. *Bridgeport*, 285 Conn. 618, 627, 941 A.2d 266 (2008).

"[When] the plaintiff asserts that the facts found were insufficient to support the court's legal conclusion, th[e] issue presents a mixed question of law and fact to which we apply plenary review. . . . We must therefore decide whether the court's conclusions are legally and

logically correct and find support in the facts that appear in the record." (Citation omitted.) *Winchester* v. *McCue*, 91 Conn. App. 721, 726, 882 A.2d 143, cert. denied, 276 Conn. 922, 888 A.2d 91 (2005); see also *Borst* v. *Ruff*, 137 Conn. 359, 361, 77 A.2d 343 (1950) (applying plenary review to determination of whether retention of check by landlord after notice to quit was served constituted acceptance of rent and waiver of default).

"Summary process is a statutory remedy which enables a landlord to recover possession of rental premises from the tenant upon termination of a lease. . . . It is preceded by giving the statutorily required notice to quit possession to the tenant. . . . Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease." (Citations omitted.) *Housing Authority* v. *Hird*, 13 Conn. App. 150, 155, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988). "[S]tatutes relating to summary process must be narrowly construed and strictly followed. . . . As a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity." (Citation omitted; internal quotation marks omitted.) *HUD/Willow Street Apartments* v. *Gonzalez*, 68 Conn. App. 638, 643, 792 A.2d 165 (2002).

Our trial courts consistently have held that providing a tenant with a new lease agreement or with an invitation to enter into a new rental agreement after a notice to quit has been served is inconsistent with an unequivocal notice to quit.[2] See *Bristol Residential Properties* v. *Van Kirk*, Superior Court, judicial district of New

---

[2] Ordinarily, this court does not rely on Superior Court authority. In this instance, however, there is sparse appellate authority directly on point and a significant body of authority written by judges who, while assigned to the housing division of the Superior Court, gain specialized expertise and whose opinions are relied on by practitioners in the field.

Britain, Housing Session, Docket No. NBSP-46757 (January 10, 2007) (42 Conn. L. Rptr. 611) (notice to quit equivocal when payment invoice caused confusion about whether lease agreement actually terminated or possibly was reinstated); *Londregan* v. *Freedman*, Superior Court, judicial district of New London, geographical area number ten, Docket No. 17122 (June 8, 2001) (letters indicating that tenant must pay rent to remain on premises evidence of ongoing invitation to enter into new rental agreement and, thus, notice to quit became equivocal); *Loureiro* v. *Drobiak*, Superior Court, judicial district of Hartford-New Britain at Hartford, Housing Session, Docket No. 81608 (August 3, 1995) (notice to quit equivocal when landlord telephoned tenant day after quit date asking him when he was going to sign new lease); *617 Park Street Ltd.* v. *Diakomanolis*, Superior Court, judicial district of Hartford-New Britain at Hartford, Housing Session, Docket No. SPH-9407-76760 (October 31, 1994) (12 Conn. L. Rptr. 574) (new lease proposal sent to plaintiff rendered notice to quit equivocal); *Church Street South Ltd. Partnership* v. *Harding*, Superior Court, judicial district of New Haven, Housing Session, Docket No. SPNH-9310-36899 (December 3, 1993) (10 Conn. L. Rptr. 593) (letter stating rent amount and inviting defendant to come to rental office to sign paperwork rendered notice to quit equivocal); *Danpar Associates* v. *Falkha*, 37 Conn. Sup. 820, 821–22, 438 A.2d 1209 (1981) (Appellate Session held notice to quit negated when landlord's attorney wrote to tenant day after notice to quit served indicating summary process action was continuing and stating: " 'My client had no objection to re-writing the lease with the increased rent, but at this point the only thing that stands in the way is money. Please take this up with your client and advise.' "); compare *EMC Mortgage Corp.* v. *Abdulrahim*, Superior Court, judicial district of Middlesex, Docket No. CV-09-016162 (June 2, 2008)

(documents sent by landlord to tenant that mentioned foreclosure proceeding and indicated tenant could not remain on premises did not provide indication of "any opportunity to negotiate a new lease or tenancy").

In the present case, there was no communication by Deans initiating a new lease agreement or inviting the payment of rent. There were actions, however, that were not consistent with a "clear intention to terminate the lease and to proceed with judicial process to secure possession." (Internal quotation marks omitted.) *Bristol Residential Properties* v. *Van Kirk*, supra, 42 Conn. L. Rptr. 612, quoting *Zitomer* v. *Palmer*, 38 Conn. Sup. 341, 343, 446 A.2d 1084 (1982) (Appellate Session). Both Valencia and Deans testified that Deans told her that he did not want to evict her and that they could try to work out a settlement. According to Deans, he communicated to Valencia that he did not like spending money on attorney's fees, and Valencia testified that Deans said that he wanted to avoid attorneys and court. Further, the writing of June 30 contained an agreement that Deans would forgive two months of use and occupancy payments and that they would "work . . . to straighten out [the] arrearage." The combination of these written and spoken statements could create reasonable doubt in the mind of a reasonable tenant as to whether the lease, in fact, remained terminated.[3] Summary process statutes are strictly construed, and a paramount consideration is the goal of insulating the tenant from confu-

---

[3] We note that this is an objective standard and that the court employed this standard, as demonstrated in its insistence on relying on the acts of the parties rather than the parties' intentions. This approach also is consistent with Superior Court cases on this issue. See, e.g., *Bristol Residential Properties* v. *Van Kirk*, supra, 42 Conn. L. Rptr. 611 (noting that payment invoice sent after notice to quit might reasonably be understood as invitation to pay past due rent and avoid eviction); *Danpar Associates* v. *Falkha*, supra, 37 Conn. Sup. 823–24 (observing that attorney's letter following notice to quit reasonably might be understood as invitation to further negotiations).

sion and uncertainty. See *Rowe 77 Associates, LLC* v. *Pickett,* Superior Court, judicial district of Hartford, Docket No. HDSP-152727 (June 21, 2010) ("[t]he requirement that a notice to quit be unequivocal protects a tenant from confusion and uncertainty concerning the tenant's continuing right to remain in occupancy or the need to make other arrangements"); see also *Vesta Windham, LLC* v. *Burgos,* Superior Court, judicial district of Windham, Docket No. CV-11-0613967-S (June 5, 2007) ("[i]f there is equivocal language in the notice itself or prior or subsequent communication from the landlord, then the notice is improper"). We conclude that it does not impermissibly burden a landlord to require him or her, if he or she chooses, to try to settle a case after service of a notice to quit, to inform the tenant that the summary process action is going forward and that unless a full settlement is reached between the parties, the eviction action will proceed to conclusion. Deans did not communicate to Valencia that the summary process action was proceeding to conclusion unless they successfully negotiated a pretrial settlement.[4] Accordingly, we affirm the court's ruling that the notice to quit was rendered equivocal by Deans' conduct.[5]

---

[4] In considering this issue, we carefully have considered the important public policy of encouraging pretrial settlements, as the plaintiff raises in its brief. Requiring a landlord clearly to inform the tenant that the summary process action will continue throughout negotiations and that eviction will occur should a successful settlement not be reached does not, in our view, chill negotiations. Rather, this approach strikes the appropriate balance between allowing settlement discussions to continue and helping to ensure that the tenant is not unsure as to whether he or she still may be evicted pursuant to the pending action.

[5] Although the case is not cited in either party's brief, during oral argument, the defendants' counsel argued that *Danpar Associates* v. *Falkha,* supra, 37 Conn. Sup. 820, is directly on point. In *Danpar Associates,* the tenants, subject to a commercial lease, requested a lower rent than the lease renewal dictated. Id., 821. The landlord served a notice to quit on the tenant. Id. The following day, however, the attorney for the landlord sent a letter to the attorney for the tenants returning a check that the tenants had sent for rent under the original lease and stating that the summary process action was

## II

The plaintiff also argues that the court erred by sustaining the defendants' objections to questions about Deans' intentions regarding the writing of June 30 and about whether Deans and Valencia agreed that she would pay use and occupancy after July 31. We disagree.

The following additional facts are relevant. During direct examination of Deans, the following exchange occurred:

"[The Plaintiff's Counsel]: What was your intention in exhibit A when it says—

---

continuing. Id., 821–22. The letter ended by stating: " 'My client had no objection to re-writing the lease with the increased rent, but at this point, the only thing that stands in the way is money. Please take this up with your client and advise.' " Id. The tenants subsequently sent the landlord a check for the rent at the increased amount for the months after the expiration of the original lease. Id. The landlord's attorney, however, sent another letter the following day, indicating that the first letter was in error and the summary process action was proceeding. Id. The Appellate Session of the Superior Court rejected the landlord's appeal, reasoning that the letter from the attorney following the notice to quit "negated the effect of the notice to quit . . . at least until the further negotiations which that letter invited had terminated" and that "[t]he tender of full payment of the rent . . . before the [landlord] declared the negotiations closed, barred the [landlord] from proceeding with the forfeiture of the lease." Id., 824.

Many courts have relied on *Danpar Associates* in cases involving communications by the landlord following an unequivocal notice to quit. See, e.g., *EMC Mortgage Corp.* v. *Abdulrahim,* supra, Superior Court, Docket No. CV-09-016162; *Bristol Residential Properties* v. *Van Kirk,* supra, 42 Conn. L. Rptr. 611; *Londregan* v. *Freedman,* supra, Superior Court, Docket No. 17122; *East Hartford Housing Authority* v. *Colon,* Superior Court, judicial district of Hartford at Hartford, Docket No. HDSP-108933 (November 27, 2000); *Avalon Properties, Inc.* v. *Evans,* Superior Court, judicial district of Hartford-New Britain, Housing Session, Docket No. SPH-87763 (October 29, 1996); *Loureiro* v. *Drobiak,* supra, Superior Court, Docket No. 81608; *617 Park Street Ltd.* v. *Diakomanolis,* supra, 12 Conn. L. Rptr. 574. We caution against mechanical application of *Danpar Associates* and note that the circumstances in that case involved attempts to renegotiate a commercial lease. The circumstances of *Danpar Associates* may not always be relevant to cases involving conduct by a landlord that may be inconsistent with termination of a tenant's occupancy subsequent to service of a notice to quit.

"[The Defendants' Counsel]: Objection, Your Honor, back to intentions.

"The Court: Yeah, sustained.

"[The Plaintiff's Counsel]: It's a vague statement, Your Honor, in here. She should (indiscernible) to explain.

"The Court: Is there—I'm ruling on what's factually determined, what's written, what's stated. [Are] there any further questions of the witness?

"[The Plaintiff's Counsel]: Were you able to agree with [Valencia] as to her paying use and occupancy for any dates after July 31?

"[Deans]: No.

"[The Defendants' Counsel]: Your Honor, I'm going to object. The evidence—

"[Deans]: No, I was—I did not . . .

"[The Defendants' Counsel]: Your Honor, my objection is that this is going over issues that have already been stipulated to. . . .

"The Court: [I]t is not a matter of whether there was an agreement. The law is very clear that the issue before this court this afternoon is whether the acts or the writings of a landlord rendered to what was previously an effective notice to quit equivocal and, therefore, caused the action to be placed in jeopardy. So agreements have nothing to do with it. Motivation has nothing to do with it. Reasons have nothing to do with it. It's acts of the parties determined by the facts."

"The appropriate standard of review in cases concerning the admissibility of evidence is limited to whether the trial court abused its discretion. . . . It is generally accepted that a trial court has broad discretion in ruling on the admissibility of evidence and appellate courts will ordinarily not disturb a trial court's

ruling on admissibility of evidence unless a clear abuse of discretion is shown. . . . Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. Reversal is required only when an injustice appears to have occurred." (Internal quotation marks omitted.) *State* v. *Wright*, 58 Conn. App. 136, 148, 752 A.2d 1147, cert. denied, 254 Conn. 907, 755 A.2d 884 (2000).

The plaintiff argues that the court erred by not allowing inquiry into the intent underlying the writing and the discussions while simultaneously basing its judgment of dismissal on the writing of June 30. The plaintiff's argument fails. It claims that the court "rejected the importance of whether or not there was an agreement between Mr. Deans and [Valencia] . . . ." In sustaining the defendants' objection, however, the court explicitly explained that it was not concerned with the motivations of the parties. Although the court stated that "agreements have nothing to do with it," the context of the statement makes clear that the court was not suggesting that it was immaterial whether there was a settlement agreement between the parties; rather, the court meant that it was irrelevant whether the parties reached a mutual understanding regarding the terms of the writing of June 30: "The law is very clear that the issue before this court this afternoon is whether the acts or the writings of a landlord rendered . . . what was previously an effective notice to quit equivocal and therefore caused the action to be placed in jeopardy." Accordingly, we conclude that the court's explanation was reasonable in context, and that the court did not abuse its discretion in sustaining the defendants' objection.

The judgment is affirmed.

In this opinion the other judges concurred.