******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CYNDI LYONS *v.* ROBERT CITRON ET AL.
(AC 39940)

DiPentima, C. J., and Elgo and Beach, Js.

*Syllabus*

The plaintiff landlord sought, by way of summary process, to regain posses-
sion of certain premises leased to the defendant tenants. The plaintiff,
which had entered into a one year residential rental agreement with
the defendants, served them with a notice to quit based on, inter alia,
nonpayment of rent for June, 2016. When the defendants failed to vacate
the premises, the plaintiff initiated a summary process action in July,
2016. Thereafter, in August, 2016, the plaintiff sent a text message to
the defendants asking for the rent, and the defendants moved to dismiss
the action, claiming that the text message rendered the notice to quit
equivocal and that it did not terminate the tenancy. The plaintiff with-
drew the initial action in September, 2016, and on the same day, served
the defendants with a second notice to quit, again on the ground of,
inter alia, nonpayment of rent. Subsequently, the plaintiff initiated a
second summary process action. The trial court rendered judgment in
favor of the plaintiff, and the defendants appealed to this court. They
claimed that the court erroneously rendered judgment for the plaintiff
on the ground of nonpayment of rent when the plaintiff prematurely
served the defendants with the underlying notice to quit on the same
day she withdrew her first summary process action, instead of waiting
nine days after rent became due to serve the notice as required by
statute (§ 47a-15a). *Held* that because the service of the second notice
to quit failed to comply with the statutory timing requirements, the trial
court lacked subject matter jurisdiction to consider the plaintiff's second
summary process action: where, as here, a landlord files a summary
process action based on a notice to quit and subsequently withdraws
the action, the lease is restored, its terms apply prospectively, rent
becomes due on the day the summary process action is withdrawn, and
the reinstatement of the lease triggers a new nine day grace period
within which the tenant must pay rent in order to avoid a summary
process action by the landlord, which must wait nine days after with-
drawing a summary process action before serving the tenant with a new
notice to quit, and although the defendants moved to dismiss the first
action on the ground that the notice to quit had become equivocal and
could not serve as a basis for the pending summary process action, that
issue was not resolved until the plaintiff withdrew that action and, during
the month between the plaintiff's text message and her withdrawal of
the first action, the question of whether the lease had been reinstated
had not been decided; accordingly, rent became due as of the date of
the plaintiff's withdrawal of the first action, and the plaintiff's notice to
quit, which was served on that same day, was premature because it was
served within the nine day grace period provided by § 47a-15a.

Argued March 15—officially released June 19, 2018

*Procedural History*

Summary process action, brought to the Superior
Court in the judicial district of Stamford-Norwalk,
Housing Session, where the plaintiff filed a withdrawal
in part; thereafter, the case was tried to the court, *Rodri-
guez, J.*; judgment for the plaintiff; subsequently, the
court denied the defendants' motion to reargue, and
the defendants appealed to this court. *Reversed*; *judg-
ment directed.*

*Abram Heisler*, for the appellants (defendants).

*Opinion*

BEACH, J. This is a case involving multiple notices to quit. The defendants in this summary process action, Robert Citron and Gail Citron, appeal from the trial court's judgment of possession in favor of the plaintiff, Cyndi Lyons.[1] On appeal, the defendants claim that the court erroneously rendered judgment for the plaintiff on the ground of nonpayment of rent when the plaintiff prematurely served the defendants with the underlying notice to quit on the day she withdrew her first summary process action, instead of waiting nine days after rent became due to serve the notice, as required by General Statutes § 47a-15a.[2] We agree and, accordingly, reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. On July 6, 2015, the plaintiff and the defendants entered into a one year residential rental agreement for occupancy of a house located at 9 Cannon Street in Norwalk (lease). Under the terms of the lease, the defendants agreed to pay rent on or before the first day of each month. In June, 2016, the plaintiff served the defendants with a notice to quit (first notice to quit) pursuant to General Statutes § 47a-23,[3] based, in relevant part, on nonpayment of rent for that month.

The defendants failed to vacate the premises, and in July, 2016, the plaintiff initiated a summary process action (first action).[4] See *Lyons* v. *Citron*, Superior Court, judicial district of Stamford-Norwalk, Housing Session at Norwalk, Docket No. CV-16-5001142-S. On August 4, 2016, the plaintiff sent a text message to the defendants, asking "[w]here's my rent?" The defendants moved to dismiss the plaintiff's case, arguing that the text message rendered the first notice to quit equivocal.[5] On September 6, 2016, the plaintiff withdrew the first action.

On the same day, September 6, 2016, the plaintiff caused a second notice to quit to be served on the defendants, again on the ground of, inter alia, nonpayment of rent. Again, the defendants did not vacate the premises. Accordingly, on September 13, 2016, the plaintiff initiated a second summary process action (second action), which is the underlying action in this appeal.[6] The plaintiff alleged, in count one of her complaint, that the defendants had "failed to pay any rent or use and occupancy to the [p]laintiff for the months of June, 2016, July, 2016, August, 2016 and September, 2016 within the grace period provided by law for residential property."[7]

On October 13, 2016, the defendants moved to dismiss count one of the plaintiff's complaint. The defendants argued that the "court lacks subject matter jurisdiction over count one which claims nonpayment of rent" because the plaintiff's withdrawal of the first "action

had the effect of reinstating the defendants' lease and creating a new grace period," and "[t]he plaintiff failed to wait the statutory nine day grace period before serving the notice to quit in [the second action]."[8] The plaintiff argued, in her objection to the defendants' motion and at the court's hearing on the motion, that because the text message rendered the first notice to quit equivocal,[9] the lease was never terminated and that, therefore, the plaintiff did not need to wait nine days after withdrawing the first action before serving the defendants with the second notice to quit. The court denied the defendants' motion to dismiss, and the case proceeded to trial.

On November 22, 2016, following the trial, at which the defendants were not present, the court rendered judgment in favor of the plaintiff for immediate possession. The defendants moved to reargue, arguing that the court improperly rendered judgment for the plaintiff on the ground of nonpayment of rent because the plaintiff had served the underlying notice to quit on the day she withdrew the first action. Following oral argument, the court denied that motion. The defendants brought the present appeal from the court's judgment of possession.[10]

On appeal, the defendants claim that the court erroneously rendered judgment for the plaintiff on the ground of nonpayment of rent because the plaintiff caused the defendants to be served with the underlying notice to quit on the same day that she withdrew the first summary process action.[11] The defendants argue, in essence, that the plaintiff's withdrawal of the first action reinstated the tenancy, thereby triggering a new nine day grace period under § 47a-15a, and that the second notice to quit was invalid because the plaintiff failed to wait nine days after her withdrawal of the first action before causing the notice to quit to be served. We agree.

We begin by setting forth the standard of review and relevant law. "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Service of a valid notice to quit, which terminates the lease and creates a tenancy at sufferance . . . is a condition precedent to a summary process action under § 47a-23 that implicates the trial court's subject matter jurisdiction over that action." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 466, 974 A.2d 626 (2009).

Our Supreme Court has "articulated [the] standard of reviewing challenges to the trial court's subject matter jurisdiction in a summary process action on the basis

of a defect in the notice to quit. Before the [trial] court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit." (Internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 388, 973 A.2d 1229 (2009). "[T]he summary process statute must be narrowly construed and strictly followed. . . . The failure to comply with the statutory requirements deprives the court of jurisdiction to hear the summary process action." (Citations omitted; internal quotation marks omitted.) *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 582, 548 A.2d 744, cert. denied, 209 Conn. 826, 552 A.2d 432 (1988). "This court's review of the trial court's determination as to whether the notice to quit served by the plaintiff effectively conferred subject matter jurisdiction is plenary." *Bayer* v. *Showmotion, Inc.*, supra, 388.

Under the summary process statute, one of the grounds for terminating a lease and obtaining occupancy or possession of the premises is "nonpayment of rent within the grace period provided for residential property in [§] 47a-15a . . . ." General Statutes § 47a-23 (a) (1) (D). Under § 47a-15a, "[i]f rent is unpaid when due and the tenant fails to pay rent within nine days thereafter . . . the landlord may terminate the rental agreement" by serving the tenant with a notice to quit in accordance with § 47a-23. If the landlord does not wait until the expiration of this statutory nine day grace period before serving the notice to quit, the notice to quit is defective and the court does not have jurisdiction to hear a summary process action based on that notice to quit. See *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, supra, 16 Conn. App. 582.

"A breach of a covenant to pay rent does not automatically result in the termination of a lease. . . . The failure to pay rent gives the landlord a right to terminate the lease. . . . In order to terminate a lease, a landlord must perform some unequivocal act which clearly demonstrates his intent to terminate the lease." (Citations omitted.) Id., 583 n.8. "Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease." (Internal quotation marks omitted.) *Centrix Management Co., LLC* v. *Valencia*, 132 Conn. App. 582, 587, 33 A.3d 802 (2011). "The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a tenancy at will is converted to a tenancy at sufferance. . . . It is necessary to prove the allegations of the notice to quit possession in order to obtain a judgment for possession." (Citations omitted.) *Housing Authority* v. *Hird*, 13 Conn. App. 150, 155, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988).

Some circumstances may require a landlord to serve a second notice to quit prior to commencing a summary

process action in order to create jurisdiction. For instance, if a landlord serves a notice to quit and commences a summary process action based on that notice to quit, then voluntarily withdraws the summary process action prior to "a hearing and judgment thereon," the original lease is reinstated. See id., 156–57. When a landlord withdraws a summary process action that had been preceded by a valid notice to quit, "the landlord is required to serve a new notice to quit pursuant to § 47a-23 prior to commencing another summary process action against that tenant under § 47a-23a." *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, supra, 292 Conn. 465, 474 (requiring new notice to quit prior to commencement of new summary process action in context of commercial lease).

Whether the withdrawal of the prior action and subsequent reinstatement of a residential lease triggers a new nine day grace period for payment of rent under § 47a-15a is an issue of first impression before this court.[12] When a notice to quit terminates the lease, the tenant "is excused from a duty to pay the stipulated rent under the lease . . . ." *Housing Authority* v. *Hird*, supra, 13 Conn. App. 158. If the landlord files a summary process action based on that notice to quit and subsequently withdraws the action, the lease is restored and the lease's terms apply prospectively. *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 464, 948 A.2d 379, cert. denied, 289 Conn. 906, 957 A.2d 873 (2008). Because the lease's terms do not apply retroactively, rent becomes due on the day the summary process action is withdrawn and the lease is restored. See *Housing Authority* v. *Hird*, supra, 156–57 (rent due for January when summary process action commenced in November and withdrawn in January); see also *Tamborra* v. *Jordan*, Superior Court, judicial district of New London, Docket No. CV21-10160 (December 22, 1999) (26 Conn. L. Rptr. 200, 202) (rent became due on day first action withdrawn). Accordingly, we hold that the reinstatement of the lease triggers a new nine day grace period within which the tenant must pay rent in order to avoid a summary process action; see General Statutes § 47a-15a;[13] and a landlord may serve a new notice to quit on the ground of nonpayment of rent only if the tenant fails to pay rent on the day of the previous action's withdrawal or within nine days thereafter.

In this case, no one has suggested that the plaintiff's first notice to quit did not comply with the statutory requirements and, thus, it served as the plaintiff's "unequivocal act notifying the [defendants] of the termination of the lease." (Internal quotation marks omitted.) See *Centrix Management Co., LLC* v. *Valencia*, supra, 132 Conn. App. 587. Upon receipt of the plaintiff's August 4, 2016 text message inquiring about rent, the defendants moved to dismiss the first action, arguing that the text message had rendered the plaintiff's intent to terminate equivocal. See, e.g., *Bargain Mart, Inc.* v.

*Lipkis*, 212 Conn. 120, 134, 561 A.2d 1365 (1989) ("notice to quit will not terminate a lease if the notice itself is invalid"). On September 6, 2016, the plaintiff withdrew the first action; the court did not address the question of whether the first notice had been valid. That same day, the plaintiff served the defendants with the second notice to quit, on the ground of nonpayment of rent. Whether the plaintiff prematurely served this notice to quit depends on whether rent became due as of her August 4 text message to the defendants or as of her September 6 withdrawal of the first action.

The defendants premise their claim that the second notice to quit was premature on their position that rent became due on the day that the plaintiff withdrew the first action, not on the day she sent the text message. Although the defendants moved to dismiss the first action, arguing that the notice to quit had become equivocal and, therefore, could not serve as the basis for the pending summary process action, that issue was not resolved until the plaintiff withdrew that action.[14] During the month between the plaintiff's text message and her withdrawal of the first action, the question of whether the lease had been reinstated had not been decided. Accordingly, we hold that rent became due as of the date of the plaintiff's withdrawal of the first action, and the plaintiff's notice to quit, which was served on that same day, was premature because it was served within the nine day grace period provided by § 47a-15a.[15] Because the timing of the service of the notice to quit failed to comply with the statutory requirements, the court did not have jurisdiction to hear the second summary process action. See *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, supra, 16 Conn. App. 582.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the action.

In this opinion the other judges concurred.

[1] After the defendants filed the present appeal, the plaintiff's attorney moved for permission to withdraw as counsel for the plaintiff, which motion the trial court granted. The plaintiff did not file an appearance in this appeal.

[2] General Statutes § 47a-15a provides in relevant part that "[i]f rent is unpaid when due and the tenant fails to pay rent within nine days thereafter . . . the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive."

[3] General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor . . . desires to obtain possession or occupancy of any land or building, any apartment in any building, any dwelling unit, any trailer, or any land upon which a trailer is used or stands, and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons . . . (D) nonpayment of rent within the grace period provided for residential property in section 47a-15a or 21-83 . . . such owner or lessor . . . shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit, at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

[4] "We properly may take judicial notice of [pleadings in that case]." *State* v. *Joseph*, 174 Conn. App. 260, 268 n.7, 165 A.3d 241, cert. denied, 327 Conn. 912, 170 A.3d 680 (2017); see also *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527, 294 A.2d 633 (1972) ("[t]here is no question . . . concerning our power to take judicial notice of files of the Superior

Court, whether the file is from the case at bar or otherwise"); *Folsom* v. *Zoning Board of Appeals*, 160 Conn. App. 1, 3 n.3, 124 A.3d 928 (2015) (taking "judicial notice of the plaintiff's Superior Court filings in . . . related actions filed by the plaintiff").

[5] An equivocal notice to quit does not effectively terminate a tenancy. *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 473 n.18, 974 A.2d 626 (2009). Conduct after service of a notice to quit that indicates ambivalence toward termination may render the notice to quit ineffective. See *Centrix Management Co., LLC* v. *Valencia*, 132 Conn. App. 582, 587–89, 33 A.3d 802 (2011) ("[o]ur trial courts consistently have held that providing a tenant with a new lease agreement or with an invitation to enter into a new rental agreement after a notice to quit has been served is inconsistent with an unequivocal notice to quit"). The subsequent conduct does not, of course, amend the language of the notice to quit. Subsequent conduct may, however, be evidence of a landlord's ambivalent intent to terminate the lease. See id.

[6] The plaintiff also filed a motion for use and occupancy payments, which the court granted. At the subsequent trial, the plaintiff testified that as of that time, the defendants still had not paid rent or use and occupancy to her.

[7] In the second notice to quit, the plaintiff had also demanded that the defendants quit possession or occupancy of the premises because the defendants "originally had the right or privilege to occupy the premises, but [their] right or privilege to occupy has been terminated" and because the "[p]remises [are] occupied by one or more people who never had the right or privilege to occupy such premises." The plaintiff incorporated these two additional grounds as counts two and three of her September, 2016 complaint, respectively, but expressly did not pursue these counts at trial.

[8] Similarly, in the defendants' answer, filed after their motion to dismiss but before the court's hearing and order regarding that motion, the defendants asserted as a special defense that "[t]he plaintiff withdrew an earlier summary process case the same day that she served a notice to quit in this matter. The withdrawal of the earlier complaint had the effect of reinstating the tenants' tenancy and triggering a new nine day grace period."

[9] As noted previously; see footnote 5 of this opinion; the notice to quit is not changed by subsequent conduct. Rather, the landlord's intent to terminate may be rendered ambivalent by subsequent conduct.

[10] At oral argument before this court, the defendants' counsel represented that, as of that time, the defendants remained in possession of the premises.

[11] As noted in footnote 1 of this opinion, the plaintiff did not appear in this appeal.

[12] As the defendants noted in their brief to this court, this issue has been directly addressed by two decisions of the housing division of the Superior Court, both of which concluded that the withdrawal of a summary process action and consequent reinstatement of the rental agreement triggers a new grace period pursuant to § 47a-15a. See *Tamborra* v. *Jordan*, Superior Court, judicial district of New London, Docket No. CV21-10160 (December 22, 1999) (26 Conn. L. Rptr. 200, 202); *Sammy Redd & Associates* v. *May*, Superior Court, judicial district of Hartford, Housing Session, Docket No. SPH 95376 (January 21, 1998) (22 Conn. L. Rptr. 107, 108); see generally *Centrix Management Co., LLC* v. *Valencia*, supra, 132 Conn. App. 587 n.2 ("Ordinarily, this court does not rely on Superior Court authority. In this instance, however, there is sparse appellate authority directly on point . . . .").

[13] The grace period pursuant to § 47a-15a begins on the day rent becomes "due."

[14] Notably, in cases where notices to quit were served and the leases in question were deemed to remain in effect continuously because of defects in the notices, the notices were defective on their face, and not rendered ineffective by some later event. See, e.g., *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, supra, 16 Conn. App. 582; *Housing Authority* v. *Hird*, supra, 13 Conn. App. 156–57. Thus, the unequivocal intent had never been expressed where the initial notice to quit was equivocal.

[15] This court's conclusion that a landlord must wait nine days after withdrawing a summary process action before serving the tenant with a new notice to quit is consistent with our Supreme Court's preference for bright line rules in summary process actions. See *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, supra, 292 Conn. 473 ("not requiring the service of a new notice to quit as a per se rule could well complicate the status of the parties' relationship after the withdrawal of the initial complaint, and would require more extensive determinations by the trial court concerning the parties' intentions and whether postwithdrawal payments are for

rent, or use and occupancy").

_____