******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HOUSING AUTHORITY OF THE CITY OF NEW BRITAIN *v.* CALVIN W. NEAL
## (AC 44720)

Cradle, Suarez and Bear, Js.

*Syllabus*

The plaintiff housing authority sought, by way of a summary process action, to regain possession of certain premises leased to the defendant tenant. The plaintiff served a notice to quit possession for nonpayment of rent on the defendant and, thereafter, filed a summary process action. Subsequently, the plaintiff and the defendant entered into a stipulated agreement pursuant to which the trial court rendered a judgment of possession in favor of the plaintiff and a stay of execution. In accordance with the stipulated judgment, the plaintiff agreed to allow the defendant to remain in the premises provided that the defendant made reasonable use and occupancy payments to the plaintiff and satisfied other conditions. Thereafter, the plaintiff filed an affidavit of noncompliance requesting an order for execution for possession on the ground that the plaintiff had not received payment from the defendant in accordance with the terms of the stipulated agreement and for the alleged serious nuisance that he committed because he had been arrested for various drug offenses at the premises. The trial court denied the plaintiff's request following a hearing and sustained the defendant's objection thereto, and the plaintiff appealed to this court. *Held*:

1. The trial court's finding that the defendant was not a tenant at sufferance was clearly erroneous because it was unsupported by the facts in the record; the defendant, who continued to reside at the premises after the lease agreement was terminated as a result of the plaintiff having served on the defendant a notice to quit possession of the premises, recognized his change of status when he entered into the stipulated agreement and agreed to make use and occupancy payments instead of rent payments to the plaintiff so long as he continued to occupy the premises.

2. The trial court erred in holding that the requirements of the applicable statute (§ 47a-11) concerning the obligations of a tenant did not apply to the defendant because the stipulated agreement did not include an express condition to that effect; even in the absence of express language in the stipulation, a tenant at sufferance must fulfill all of the statutory obligations otherwise applicable to the tenant.

3. The trial court erred in concluding that an affidavit of noncompliance filed pursuant to the applicable rule of practice (§ 17-53) was not the proper method for the plaintiff to seek the issuance of an execution based on the alleged serious nuisance committed by the defendant because such proceeding would not allow for the defendant to be fully heard on that issue:

   a. The plaintiff was not required to institute a second summary process action to obtain an execution against the defendant for his alleged commission of a serious nuisance as such an action against the defendant would not have survived a motion to dismiss for lack of subject matter jurisdiction because the plaintiff had satisfied the statutory (§ 47a-15) requirement when it served on the defendant a valid notice to quit, which effectively terminated the lease between the parties, making the defendant a tenant at sufferance, and the court rendered judgment in favor of the plaintiff thereafter.

   b. The plaintiff's allegation that the defendant allegedly committed a serious nuisance was properly before the trial court and should have been considered at the hearing on the plaintiff's affidavit of noncompliance filed pursuant to Practice Book § 17-53: although the trial court expressed concerns about the defendant's due process rights, the hearing on the plaintiff's affidavit of noncompliance could have included evidence pertaining to the defendant's violations of § 47a-11 and/or the stipulation because of the separate obligations imposed on him pursuant to the stipulation and § 47a-11; moreover, although Practice Book § 17-53 does specifically reference a scenario in which the landlord seeks an execution

based on a serious nuisance included in a statute but not included in a stipulation, Practice Book § 17-53 should be interpreted liberally where the court's narrow interpretation and misapplication of § 47a-11 and Practice Book § 17-53 denied the plaintiff recourse to address the serious nuisance allegedly committed by the defendant on the premises in violation of § 47a-11 and the ability to obtain relief by way of execution of possession; furthermore, the defendant had notice of the plaintiff's claim that he violated § 47a-11 because of his arrest for the sale and possession of drugs; accordingly, the case was remanded for a new hearing at which the trial court should consider the plaintiff's affidavit of noncompliance in light of this court's conclusions that the defendant was a tenant at sufferance, the requirements of § 47a-11 applied to the defendant, and the serious nuisance issue was properly before the court.

Argued February 1—officially released April 19, 2022

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New Britain, Housing Session, where the court, *Shah, J.*, granted the parties' motion for a stipulated judgment of possession in favor of the plaintiff subject to a stay of execution, and rendered judgment thereon; thereafter, the court, *Shah, J.*, denied the plaintiff's motion for execution and sustained the defendant's objection thereto, and the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Michael S. Wrona*, for the appellant (plaintiff).

*Opinion*

BEAR, J. In this summary process action brought by the plaintiff, the Housing Authority of the City of New Britain, against the defendant, Calvin W. Neal, the plaintiff appeals from the judgment of the trial court rendered following a hearing, denying its affidavit of noncompliance with stipulation,[1] sustaining the objection of the defendant and requiring the parties to continue to perform their respective obligations pursuant to a stipulated agreement of the parties. On appeal, the plaintiff claims that the trial court erred (1) in finding that the defendant was not a tenant at sufferance, (2) in concluding that the requirements of General Statutes § 47a-11[2] did not apply to the defendant, and (3) in concluding that the filing of an affidavit of noncompliance was not the proper vehicle for addressing the alleged serious nuisance[3] committed by the defendant after judgment was rendered in favor of the plaintiff, but before the plaintiff obtained possession of the premises occupied by the defendant.[4] We agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. Pursuant to a lease agreement between the parties, the defendant resided at 67 Martin Luther King Drive, Apartment 504 in New Britain (premises). On January 13, 2020, the plaintiff served on the defendant a notice to quit possession of the premises stating that their lease agreement had been terminated for the following reasons: "(1) [The defendant] failed to keep [the premises] in a safe and sanitary condition. Such unsanitary conditions constitute a violation of [the] [l]ease [a]greement, the [defendant's] responsibilities pursuant to . . . § 47a-11, and constitute a nuisance and/or a serious [nuisance]; [and] (2) [the defendant has] broken a door at the . . . premises, which damage constitutes a violation of [the] lease [agreement] and . . . § 47a-11." On March 2, 2020, the plaintiff filed a complaint alleging that the defendant (1) violated § 47a-11, (2) violated the terms of their lease agreement, (3) committed a nuisance, and (4) committed a serious nuisance, and it sought judgment for immediate possession of the premises.

On October 22, 2020, the parties entered into a stipulated agreement. Pursuant to this agreement, judgment for possession would enter in favor of the plaintiff with a stay of execution through October 31, 2021, on the conditions that the defendant (1) pay a reasonable use and occupancy fee of $209 to the plaintiff on or before the tenth day of each month, (2) acknowledge owing the plaintiff a total arrearage in the amount of $718.50, and (3) make arrearage installment payments of $59.87 to the plaintiff on or before the tenth day of each month. The stipulated agreement also included the following additional conditions: "The defendant is to keep the

[premises] clean and take out the trash [at] regular intervals. The parties agree [that] only the defendant is allowed to occupy the premises. The defendant is to limit the [number of] individuals [on the premises] to two people at a time unless they are family members or caregivers. The parties agree to allow four inspections [of the premises] throughout the year [on] random dates."

On April 22, 2021, the plaintiff filed an affidavit of noncompliance requesting the issuance of a summary process execution for possession of the premises. In its affidavit, the plaintiff stated that it had not yet received payment from the defendant in accordance with the stipulation, and noted that the defendant was arrested on April 5, 2021, arising from his alleged possession and sale of illegal drugs and narcotics at the premises.[5] On April 26, 2021, the defendant filed an affidavit and objection to the plaintiff's affidavit of noncompliance. On May 13, 2021, the court held a hearing on the plaintiff's affidavit of noncompliance and the defendant's objection thereto. During the hearing, the court concluded that the plaintiff's affidavit of noncompliance was not the appropriate vehicle for the plaintiff to seek the eviction of the defendant for the alleged serious nuisance that he committed because "[t]he sale of drugs . . . [was not] within the scope of the [original] complaint that [the plaintiff] filed or the stipulation." The court also stated that addressing that issue at the hearing would implicate the due process rights of the defendant because the issue would not be fully heard and addressed by the court. Finally, in concluding that the defendant's due process rights would be implicated, the court also found that the defendant was a tenant. After the hearing, in its order denying the plaintiff's affidavit of noncompliance and sustaining the defendant's objection thereto, the court found "that the plaintiff has not prove[n] the defendant's noncompliance with the terms of the written stipulation. Therefore, the parties are still obligated to perform their respective obligations under the stipulated [agreement] entered on October 22, 2020."

We begin by setting forth the applicable standard of review. "It is well settled that we review the court's findings of fact under the clearly erroneous standard. We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Bozelko* v. *Statewide Construction, Inc.*, 189 Conn. App. 469, 471, 207 A.3d 520, cert. denied, 333 Conn. 901, 214 A.3d 381 (2019). "When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are

legally and logically correct and find support in the facts as they appear in the record." (Internal quotation marks omitted.) *ASPIC, LLC* v. *Poitier*, 208 Conn. App. 731, 742, 267 A.3d 197 (2021).

I

We first address the plaintiff's claim that the court erred in finding that the defendant was not a tenant at sufferance. We begin by setting forth the applicable legal principles. "A tenancy at sufferance arises when a person who came into possession of [property] right-fully continues in possession wrongfully after his right thereto has terminated. . . . After a notice to quit has been served . . . a tenant at sufferance no longer has a duty to pay rent. He still, however, is obliged to pay a fair rental value in the form of use and occupancy for the dwelling unit." (Internal quotation marks omitted.) *Brewster Park, LLC* v. *Berger*, 126 Conn. App. 630, 638, 14 A.3d 334 (2011). Accordingly, "use and occupancy payments . . . are paid to a landlord by a tenant at sufferance who occupies the [property] in the absence of a lease agreement. . . . They are most frequently associated with summary process proceedings to evict a tenant because, after a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance." (Citation omitted; internal quotation marks omitted.) *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, 340 Conn. 115, 122 n.8, 263 A.3d 87 (2021).

In the present case, on January 13, 2020, the plaintiff served on the defendant a notice to quit possession of the premises. The parties subsequently entered into the stipulated agreement on October 22, 2020, pursuant to which they agreed that a judgment of possession in favor of the plaintiff would enter, execution would be stayed, and the defendant would be permitted to reside at the premises so long as he made *use and occupancy payments* to the plaintiff and satisfied several other conditions. Accordingly, the defendant's status as a tenant at sufferance is clearly established by the facts that (1) the plaintiff served on the defendant a notice to quit possession and initiated a summary process action, (2) the defendant continued to reside at the premises after the termination of the lease agreement, and (3) the defendant recognized his change in status by agreeing to make use and occupancy payments instead of rent payments to the plaintiff so long as he continued to occupy the premises. We conclude, therefore, that the trial court's finding that the defendant is not a tenant at sufferance is clearly erroneous because it is unsupported by the facts in the record.

II

Having concluded that the defendant is a tenant at sufferance, we turn now to the plaintiff's claim that the court erred in concluding that the requirements of § 47a-

11 do not apply to the defendant. We begin by setting forth the applicable legal principles. "A tenant at sufferance is released from his obligations under a lease. . . . His only obligations are to pay the reasonable rental value of the property [that] he occupie[s] in the form of use and occupancy payments . . . and to *fulfill all statutory obligations*." (Emphasis added; internal quotation marks omitted.) Id.

In the present case, the court held that the requirements of § 47a-11[6] do not apply to the defendant because the stipulated agreement does not include an express condition to that effect. This holding, however, is clearly at odds with the principle, as set forth by our Supreme Court in *Boardwalk Realty Associates, LLC*, that, even in the absence of language in a stipulation, a tenant at sufferance must still fulfill all of the statutory obligations applicable to a tenant. Id.; see also *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 473 n.18, 974 A.2d 626 (2009) ("[A]fter a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance. . . . A tenant at sufferance is released from his obligations under a lease. . . . His only obligations are to pay the reasonable rental value of the property which he occupied in the form of use and occupancy payments . . . and to fulfill all statutory obligations." (Internal quotation marks omitted.)). Accordingly, we conclude that the court erred in holding that the requirements of § 47a-11 did not apply to the defendant.

III

Finally, we address the plaintiff's claim that the court erred in concluding that an affidavit of noncompliance, filed pursuant to Practice Book § 17-53, was not the proper method for the plaintiff to seek the issuance of an execution based on the alleged serious nuisance committed by the defendant in this case because such a proceeding would not allow for the defendant to be fully heard on that issue. The plaintiff argues that its affidavit of noncompliance was the appropriate means of addressing the alleged serious nuisance committed by the defendant because "[t]he service of the first notice to quit terminate[d] [the] existing rental agreement and . . . any subsequent notice to quit . . . cannot survive a motion to dismiss for lack of subject matter jurisdiction." (Citation omitted.) We agree with the plaintiff.

A

After concluding that the plaintiff could not use an affidavit of noncompliance to address the alleged serious nuisance created by the defendant's possession and sale of drugs, the court determined that a second summary process action was the plaintiff's only recourse to obtain a judgment of possession based on that statutory violation. Pursuant to § 47a-15, the plaintiff would

have been required to serve on the defendant a second notice to quit and a new complaint.

We first address the plaintiff's argument that it could not serve the defendant a second notice to quit on the basis of such serious nuisance. We begin by setting forth the applicable legal principles. It is well established that where a notice to quit complies with all statutory requirements, it "serve[s] as the [landlord's] unequivocal act notifying the [tenant] of the termination of the lease." (Internal quotation marks omitted.) *Lyons* v. *Citron*, 182 Conn. App. 725, 734, 191 A.3d 239 (2018). Furthermore, when a notice to quit effectively terminates a lease agreement between parties, "a second notice to quit . . . cannot survive a motion to dismiss for lack of subject matter jurisdiction." *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, 133 Conn. App. 1, 24, 33 A.3d 848 (2012). The defendant has not challenged the validity of the January 13, 2020 notice to quit, so there is no need, or jurisdiction, for the plaintiff to serve on the defendant a second notice to quit.[7]

In the present case, during the hearing on the plaintiff's affidavit of noncompliance and the defendant's objection thereto, the court erroneously concluded that the plaintiff could obtain an execution based on the alleged serious nuisance committed by the defendant only by instituting a second summary process action against the defendant pursuant to § 47a-15. Section 47a-15 provides in relevant part that, "[p]rior to the commencement of a summary process action . . . to evict based on . . . conduct by the tenant which constitutes a serious nuisance . . . the landlord shall deliver a written notice to the tenant specifying the acts . . . constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. . . ." This requirement, however, has already been satisfied in the present case because the plaintiff, on January 13, 2020, served on the defendant a valid notice to quit. See *Lyons* v. *Citron*, supra, 182 Conn. App. 734 (effective notice to quit notifies tenant of termination of lease). Because the plaintiff terminated the lease agreement on January 13, 2020, making the defendant a tenant at sufferance who is occupying and using the premises without the existence of a lease agreement, and because of the court's rendering of judgment in this case in favor of the plaintiff, the plaintiff cannot bring a second summary process action against the defendant. See, e.g., *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, supra, 133 Conn. App. 24 (if first notice to quit is valid and effective, second notice to quit cannot survive motion to dismiss for lack of subject matter jurisdiction).

The court, therefore, erroneously concluded that, although the lease agreement had been terminated and judgment of possession had entered in favor of the plaintiff by agreement of the parties, a second summary

process action was required to obtain an execution against the defendant for his alleged commission of a serious nuisance while the effect of the judgment was stayed by agreement so long as the defendant performed his obligations pursuant to the stipulation.

B

Having concluded that the plaintiff cannot properly bring a second summary process action against the defendant, we turn now to the language of Practice Book § 17-53, which provides in relevant part: "Whenever a summary process execution is requested because of a violation of a term in a judgment by stipulation or a judgment with a stay of execution beyond the statutory stay, a hearing shall be required. If the violation consists of nonpayment of a sum certain, an affidavit with service certified in accordance with Sections 10-12 through 10-17 shall be accepted in lieu of a hearing unless an objection to the execution is filed by the defendant prior to the issuance of the execution. The execution shall issue on the third business day after the filing of the affidavit. . . ."

At the hearing on the plaintiff's affidavit of noncompliance and the defendant's objection thereto, the court expressed concern that allowing the plaintiff to use its affidavit of noncompliance, filed pursuant to Practice Book § 17-53, to address the alleged serious nuisance committed by the defendant would implicate the due process rights of the defendant. Specifically, the court stated: "I absolutely understand the seriousness of the alleged criminal conduct. This is not a criminal trial, however. This is the eviction court and there needs to be proper notice and, I mean, there's many cases that I've written about a stipulation needing to have the exact terms that need to be follow[ed]. And if there isn't proper notice or a provision provided in the stipulation, then it's not the proper basis of an eviction action to go forward, especially when the underlying action didn't concern any allegations of drugs or serious nuisance based on that claim. . . . It's about due process and whether these issues are fully heard or not. So, if [the] serious nuisance claim is based on one issue and the stipulation doesn't incorporate the specific conduct that you're alleging is violated, then you're kind of skirting the entire eviction process by then bringing up some new issue." In response, the plaintiff's counsel argued: "I think there is due process, Your Honor. [The defendant] has his due process today. And certainly he's known what the issue is [before the court] today. He's had a copy of the police report. Certainly he knows that the sale of drugs is illegal, and [that he] shouldn't be doing it. I don't think it needs to be in a [stipulation] . . . ."

The plaintiff also argues in its appellate brief that the court's concerns for the defendant's due process rights are unfounded because "an affidavit of noncompliance

. . . is an action . . . that requires the court to hold a hearing in which the right to possession is to be determined . . . [and therefore] provides . . . [the tenant] with the necessary procedural and substantive due process protections." (Citation omitted; internal quotation marks omitted.) We agree with the plaintiff.

Practice Book § 17-53 clearly provides that "[w]henever a summary process execution is requested because of a violation of a term in a judgment by stipulation or a judgment with a stay of execution beyond the statutory stay, *a hearing shall be required. . . .*" (Emphasis added.) That hearing can include evidence pertaining to the defendant's violations of § 47a-11 and/or the stipulation because of the separate obligations imposed on him pursuant to the stipulation and § 47a-11. This court has long held that "[t]he statutory obligations of the landlord and tenant continue even when there is no longer a rental agreement between them. . . . A landlord also is required to fulfill his statutory obligations, even after a notice to quit has been served on the tenant and a summary process case is begun." (Citation omitted.) *Rivera* v. *Santiago*, 4 Conn. App. 608, 610, 495 A.2d 1122 (1985). By filing an affidavit of noncompliance, the plaintiff was seeking an execution as a result of the defendant's breach of his duties pursuant to either the stipulation and each applicable statute or both.

Although the language of Practice Book § 17-53 does not specifically refer to a scenario in which a landlord seeks an execution based on a serious nuisance involving conduct included in a statute but not included in a stipulation, we note that the Superior Court has previously applied Practice Book § 17-53 to a violation of § 47a-11 based on the alleged sale of drugs by a tenant. See *Housing Authority* v. *Russotto*, Superior Court, judicial district of Hartford, Docket No. HDSP-133755 (March 23, 2006) (41 Conn. L. Rptr. 56).[8] In *Russotto*, as in the present case, no statute was referred to in the stipulation between the parties, but the court, citing this court's holding in *Rivera* v. *Santiago*, supra, 4 Conn. App. 610, recognized the defendant's obligations pursuant to statute, even if those obligations were not delineated in the judgment or stipulation.[9] *Housing Authority* v. *Russotto*, supra, 59.

Additionally, our rules of practice should be "interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book § 1-8. In the present case, application of a narrow interpretation of the language of Practice Book § 17-53 would result in an injustice to the plaintiff because, pursuant to the court's ruling, the plaintiff would have no means of addressing the alleged serious nuisance committed by the defendant after the defendant had stipulated to a judgment of possession. The plaintiff would be left with no relief for the defendant's alleged violation because it would be unable to

seek an execution because there is no reference in the stipulation to the possession or sale of illegal drugs or to Practice Book § 17-53, and the plaintiff also would be unable to initiate a second summary process action based on the alleged serious nuisance because the court would not have jurisdiction over such an action. See *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, supra, 133 Conn. App. 23–24 (if first notice to quit is valid and terminates lease, second notice to quit cannot survive motion to dismiss for lack of subject matter jurisdiction). Furthermore, the court did not recognize that Practice Book § 17-53 guarantees a tenant the same opportunity to be heard in the Practice Book § 17-53 proceeding that the tenant would receive in a summary process action instituted pursuant to § 47a-15. We also note that, as the plaintiff's counsel pointed out to the court, the defendant had notice of the plaintiff's claim that he had violated § 47a-11 because of his arrest for the sale and possession of illegal drugs.

Because (1) the court's interpretation and misapplication of § 47a-11 and Practice Book § 17-53 to the facts of this case denies the plaintiff recourse to address the serious nuisance allegedly committed by the defendant on the premises in violation of § 47a-11 and the ability to obtain relief by way of execution of possession, (2) Practice Book § 17-53 provides for a hearing that safeguards the due process rights of the defendant, and (3) the defendant had notice of his alleged statutory violations, we conclude that the serious nuisance allegedly committed by the defendant was properly before the court and should have been considered at the hearing on the plaintiff's affidavit of noncompliance. Accordingly, the case must be remanded for a new hearing, in which the court should consider the plaintiff's affidavit of noncompliance in light of our conclusions that the defendant is a tenant at sufferance, that the requirements of § 47a-11 apply to the defendant, and that the serious nuisance issue was properly before the court.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] Practice Book § 17-53, which provides the basis for the use of an affidavit of noncompliance with stipulation, provides in relevant part that "[w]henever a summary process execution is requested because of a violation of a term in a judgment by stipulation or a judgment with a stay of execution beyond the statutory stay, a hearing shall be required. . . ."

[2] General Statues § 47a-11 provides: "A tenant shall: (a) Comply with all obligations primarily imposed upon tenants by applicable provisions of any building, housing or fire code materially affecting health and safety; (b) keep such part of the premises that he occupies and uses as clean and safe as the condition of the premises permit; (c) remove from his dwelling unit all ashes, garbage, rubbish and other waste in a clean and safe manner to the place provided by the landlord pursuant to subdivision (5) of subsection (a) of section 47a-7; (d) keep all plumbing fixtures and appliances in the dwelling unit or used by the tenant as clean as the condition of each such fixture or appliance permits; (e) use all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances, including elevators, in the premises in a reasonable manner; (f) not wilfully or negli-

gently destroy, deface, damage, impair or remove any part of the premises or permit any other person to do so; (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance, as defined in section 47a-32, or a serious nuisance, as defined in section 47a-15; and (h) if judgment has entered against a member of the tenant's household pursuant to subsection (c) of section 47a-26h for serious nuisance by using the premises for the illegal sale of drugs, not permit such person to resume occupancy of the dwelling unit, except with the consent of the landlord."

[3] Pursuant to General Statutes § 47a-15, the definition of "serious nuisance" includes "using the premises . . . for . . . the illegal sale of drugs . . . ."

The plaintiff attached to its affidavit a statement that the defendant had been arrested on April 5, 2021, for the possession of a controlled substance and for the sale of a narcotic substance and a copy of the pending case detail from the Judicial Branch website, and, before the court, the plaintiff alleged that the defendant violated his responsibilities pursuant to § 47a-11 and committed a serious nuisance thereby by possessing and selling illegal drugs while on the premises.

[4] The defendant did not file an appellate brief. Therefore, pursuant to Practice Book § 70-4, this appeal will be considered on the basis of the plaintiff's brief, the plaintiff's oral arguments before this court, and the record only.

[5] Specifically, the defendant was arrested for possession of a controlled substance in violation of General Statutes § 21a-279 (a) (1) and for the sale of a narcotic substance in violation of General Statutes § 21a-278 (b) (1) (A).

[6] See footnote 2 of this opinion.

[7] In *Presidential Village, LLC* v. *Phillips*, 325 Conn. 394, 401–402, 158 A.3d 772 (2017), our Supreme Court explained that a notice to quit that is invalid because of a legal defect is ineffective to terminate a lease, in which case a second notice to quit could be served on a defendant: "Summary process is a statutory remedy which enables a landlord to recover possession of rental premises from the tenant upon termination of a lease. . . . It is preceded by giving the statutorily required notice to quit possession to the tenant. . . . Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a tenancy at will is converted to a tenancy at sufferance." (Internal quotation marks omitted.) "A legally invalid notice to quit is, however, considered 'equivocal' because of [a] legal defect and, therefore, does not operate to terminate a lease." *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, supra, 292 Conn. 473 n.18; see also *Bargain Mart, Inc.* v. *Lipkis*, 212 Conn. 120, 134, 561 A.2d 1365 (2009) ("it is self-evident that if the notice is invalid, then the legal consequence of 'termination' arising from the service of a valid notice [to quit] does not result"); *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 584, 548 A.2d 744 (first notice to quit was invalid as untimely served, thus requiring service of second notice to quit), cert. denied, 209 Conn. 826, 552 A.2d 432 (1988).

[8] Although not binding on this court, we have on occasion considered Superior Court decisions that deal with the specific issues before us. See, e.g., *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, supra, 133 Conn. App. 23.

[9] Specifically, the court in *Russotto* stated: "In deciding the proper procedure to address this matter, the court must consider the interplay between Practice Book [§] 17-53 and General Statutes [§§] 47a-11 and 47a-1. As previously stated, the language of [§] 47a-11 applies to a tenant at sufferance. [Section] 47a-1 (a) defines an 'action' under the Landlord Tenant Act as follows: '[a]ction includes . . . any . . . proceeding in which rights are determined, including an action for possession.' By filing an affidavit of noncompliance pursuant to Practice Book [§] 17-53, the [l]andlord is requesting a determination of rights as to whether an execution should issue. Under the circumstances, this matter is an 'action' under the Landlord Tenant Act that requires the court to hold a hearing 'in which rights [to possession] are determined.' . . . When an execution is requested because of a violation of an express term in a judgment or a statutory obligation of a tenant, Practice Book [§] 17-53 provides the tenant with the necessary procedural and substantive due process protections." (Citation omitted.) *Housing Authority* v. *Russotto*, supra, 41 Conn. L. Rptr. 59.