******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JUSTIN FREEMAN *v.* LAW OFFICE OF J. XAVIER PRYOR, LLC, ET AL.

## (AC 48163)

Cradle, C. J., and Suarez and Clark, Js.

*Syllabus*

The defendants appealed from the trial court's judgment for the plaintiff's limited liability company, F Co., following the court's denial of their pretrial motion to dismiss, which asserted that the plaintiff F lacked standing to bring a direct action against them to recover damages allegedly suffered by F Co. The court granted F's posttrial motion to add F Co. as a party plaintiff. The defendants claimed that the court improperly applied the narrow exception created by our Supreme Court in *Saunders* v. *Briner* (334 Conn. 135) to the general rule that a member of a limited liability company lacks standing to bring a direct action to recover for injuries allegedly suffered by the company. *Held*:

The trial court improperly denied the defendants' motion to dismiss, as F lacked standing in his individual capacity because his claim sought to recover for an injury to F Co., and F failed to demonstrate that allowing him to proceed with a direct action would not prejudice F Co.'s creditors, thus rendering the exception in *Saunders* inapplicable.

The trial court's order granting F's posttrial motion to amend the complaint to add F Co. as a plaintiff did not cure F's lack of standing, as the court lacked subject matter jurisdiction over the entire trial, and there was nothing in the record to indicate that the court made the findings necessary to permit F to add F Co. as a proper party pursuant to statute (§ 52-109) because F did not claim, and the court did not find, that the action was commenced in the name of the wrong person as plaintiff through mistake as is required under § 52-109.

Argued October 20, 2025—officially released April 14, 2026

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Sheridan, J.*, denied the defendants' motion to dismiss; thereafter the case was tried to the court, *Klau, J.*; subsequently, the court, *Klau, J.*, granted the plaintiff's motion to amend the complaint to add Law Office of Justin C. Freeman, LLC, as an additional plaintiff; thereafter, the court, *Klau, J.*, rendered judgment in part for the plaintiff Law Office of Justin C. Freeman,

LLC, and the defendants appealed to this court. *Reversed*; *judgment directed*.

*J. Xavier Pryor*, self-represented, for the appellants (defendants).

*Richard E. Joaquin*, for the appellees (plaintiffs).

*Opinion*

CLARK, J. In *Saunders* v. *Briner*, 334 Conn. 135, 221 A.3d 1 (2019), our Supreme Court carved out a narrow exception to the general rule that a member of a limited liability company lacks standing to bring a direct action to recover for injuries allegedly suffered by the company. See id., 176. In the present appeal, the defendants, the Law Office of J. Xavier Pryor, LLC (Pryor office), and J. Xavier Pryor, claim that the trial court improperly applied the narrow exception created under *Saunders*, when it denied their motion to dismiss asserting that the plaintiff Justin Freeman lacked standing to bring a direct action against them to recover damages allegedly suffered by the Law Office of Justin C. Freeman, LLC (Freeman office).[1] The plaintiffs dispute that claim and further argue that, even if the court erred in denying the pretrial motion to dismiss because Freeman lacked standing to bring a direct action, any standing defect was cured when the trial court granted his posttrial motion to amend the complaint to add the Freeman office

---

[1] Following the close of evidence, the trial court granted Freeman's posttrial motion to add the Freeman office as a party to conform to the proof. We refer to Freeman and the Freeman office collectively as the plaintiffs and individually by name.

The defendants also claim that (1) the court violated their right to due process by allowing Freeman to amend his complaint and, posttrial, change his theory of the case, (2) the court erred in rendering judgment for the Freeman office on the plaintiffs' breach of contract claim notwithstanding its conclusion that the defendants did not breach the contract, (3) the court erred in rendering judgment for the Freeman office because, due to the Freeman office's failure to file an appearance, it was not a party to the case, and (4) the court erred in awarding costs to the Freeman office. Because we conclude that the court should have granted the defendants' motion to dismiss, we need not address the defendants' remaining claims.

as a plaintiff.[2] We conclude that the court improperly denied the motion to dismiss and that Freeman's lack of standing was not cured by the court's order granting his posttrial motion to amend the complaint. Accordingly, we reverse the judgment of the trial court.

The following facts, as alleged in the complaint or as established by uncontested evidence submitted in conjunction with the motion to dismiss,[3] and procedural history are relevant to this appeal. At the times relevant to the dispute in this matter, Freeman was an attorney licensed to practice law in this state. Prior to September 16, 2015, Freeman practiced law as a sole proprietor under the name Law Office of Justin C. Freeman. On that date, Freeman formed the Freeman office as a single-member limited liability company.

On January 20, 2015, Freeman agreed to represent Chanda Gonzalez in a personal injury action (Gonzalez matter) and assigned Pryor, who was then employed by Freeman as an associate attorney, to work on the case. On or around March 25, 2016, Pryor resigned from the Freeman office to open his own law firm, the Pryor office. In early June, 2016, after it became apparent to Freeman that the Gonzalez matter likely would proceed to trial, Freeman asked Pryor to continue working on the matter. Pryor agreed and, on June 6, 2016, the Pryor office filed an appearance in the Gonzalez matter in addition to

---

[2] Although the plaintiffs did not raise this argument in a statement of alternative grounds to affirm the trial court's decision pursuant to Practice Book § 63-4, we address the issue because it implicates the trial court's subject matter jurisdiction and both parties had the opportunity to brief the issue. See, e.g., *Housing Authority* v. *Cyr*, 234 Conn. App. 527, 529 n.2, 344 A.3d 527 (2025) ("[d]espite the defendant's noncompliance with our rules of practice, we will review his alternative ground for affirmance because it implicates the subject matter jurisdiction of the trial court and, therefore, may be raised at any time"); see also *Gerardi* v. *Bridgeport*, 294 Conn. 461, 466, 985 A.2d 328 (2010) (addressing alternative ground to affirm despite failure to file § 63-4 statement because claim implicated trial court's subject matter jurisdiction and both parties had opportunity to brief issue).

[3] See *Derblom* v. *Archdiocese of Hartford*, 203 Conn. App. 197, 200, 247 A.3d 600 (2021), aff'd, 346 Conn. 333, 289 A.3d 1187 (2023).

the appearance previously filed by the Freeman office. The complaint alleges that Freeman and the Pryor office reached an oral agreement that they would split the attorney's fees equally if the Pryor office tried the Gonzalez matter to verdict but that, if the matter settled before trial, the Pryor office would be paid a reasonable fee for its work on the case.

On October 17, 2016, Pryor attended a mediation in the Gonzalez matter, at which the parties agreed to settle the case for $750,000. At Pryor's request, the insurer for the defendant in the Gonzalez matter issued a check in the amount of $750,000 payable to the Pryor office and Gonzalez. After deducting costs and attorney's fees owed to Gonzalez' prior counsel, attorney's fees in the amount of $165,000 remained to be split between the Freeman office and the Pryor office. Freeman and Pryor disagreed as to the division of the attorney's fees. On February 15, 2017, the Pryor office issued a check to Freeman in the amount of $82,500, representing one half of the total fee to be split between the two firms. Freeman declined to cash the check.

On February 16, 2021, Freeman commenced this action in his individual capacity against Pryor and the Pryor office, alleging, against each defendant, claims sounding in breach of contract, conversion, unjust enrichment, and quantum meruit, and seeking an accounting of the settlement proceeds. The complaint does not allege that Freeman registered the Freeman office as a limited liability company in September, 2015. Rather, it alleges that, "[a]t all times relevant to this matter, [Freeman] was the owner, manger and principal of the business of the [Freeman office], as a sole proprietor . . . ."

On October 29, 2021, the defendants filed a motion to dismiss and an accompanying memorandum of law, claiming that Freeman lacked standing to pursue this action in his individual capacity. As an exhibit to their memorandum of law, the defendants attached documentation from the Office of the Secretary of the State indicating that the Freeman office registered as a limited

liability company on September 16, 2015, and that it had since dissolved. The defendants argued that, because Gonzalez was a client of the Freeman office, any harm resulting from the fee dispute would have been suffered by the Freeman office and not Freeman individually. The defendants argued, therefore, that Freeman lacked standing to bring this action in his individual capacity.

On November 23, 2021, Freeman filed an objection to the motion to dismiss, an accompanying memorandum of law, and an affidavit in support of his objection. In the affidavit, Freeman attested that he had formed the Freeman office as a single-member limited liability company on September 16, 2015, while the Gonzalez matter was still ongoing. In his memorandum of law, Freeman argued, inter alia, that he had standing as the sole member of the Freeman office to bring this action in his individual capacity pursuant to our Supreme Court's decision in *Saunders* v. *Briner*, supra, 334 Conn. 135.[4] Specifically, he argued that, "[a]lthough generally a member or manager of a limited liability company may not sue in an individual capacity to recover for an injury to the limited liability company . . . *Saunders* created an exception for single member limited liability companies which applies here."

The court, *Sheridan*, *J.*, held a hearing on the defendants' motion to dismiss on May 2, 2022. At the hearing, the defendants argued that the general rule in

---

[4]Freeman also argued that he had standing in his individual capacity because he had retained Gonzalez as a client prior to forming the Freeman office as a limited liability company and had performed work on the matter while he was operating his firm as a sole proprietorship. The trial court, however, did not address that argument. Instead, it denied the motion to dismiss on the ground that, pursuant to *Saunders*, Freeman had standing as the sole member of the Freeman office to bring a direct action for harms suffered by the company. On appeal, the plaintiffs argue only that Freeman had standing to bring a direct action pursuant to *Saunders*. Because the plaintiffs do not argue that we should affirm the court's judgment on the alternative ground that Freeman performed work on the Gonzalez matter prior to forming the Freeman office as a limited liability company, we need not address that argument in this opinion.

Connecticut is that an individual member of a limited liability company cannot bring a direct action to recover for an injury suffered by the company but, instead, must bring a derivative action on behalf of the company. The defendants further argued that the exception recognized in *Saunders* was inapplicable because Freeman failed to satisfy the test set forth by our Supreme Court in that case. Specifically, the defendants noted that *Saunders* allowed the member of a single-member limited liability company to bring a direct action to recover for an injury suffered by the company only if doing so would not expose the company to a multiplicity of actions, would not materially prejudice the interest of creditors, and would not interfere with the fair distribution of recovery among all interested parties. See *Saunders* v. *Briner*, supra, 334 Conn. 176. The defendants argued that Freeman did not submit evidence relevant to any of those three factors and, more specifically, that "Freeman has not offered any proof which this court can rely on [to show] that the interest of creditors of [the Freeman office] would not be materially prejudiced." In addition, the defendants informed the court that, in fact, the Pryor office itself was one such creditor, as it was the plaintiff in *Law Office of J. Xavier Pryor, LLC* v. *Law Office of Justin C. Freeman, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-21-6143158-S, an action against the Freeman office arising from a separate dispute over attorney's fees, of which it asked the court to take judicial notice.[5] The defendants argued that, if Freeman prevailed in the instant action, "none

---

[5] Although the trial court did not rule on the defendants' request to take judicial notice of *Law Office of J. Xavier Pryor, LLC* v. *Law Office of Justin C. Freeman, LLC*, supra, Superior Court, Docket No. CV-21-6143158-S, the plaintiffs—who were defendants in that action—do not dispute the defendants' claim that the action was pending at the time the motion to dismiss was adjudicated. Moreover, we may, and do, take judicial notice of the court file in that action. See *Village Mortgage Co.* v. *Veneziano*, 203 Conn. App. 154, 162 n.3, 247 A.3d 588 (2021) (Appellate Court may take judicial notice of records of Superior Court); see also *Derderian* v. *Derderian*, 3 Conn. App. 522, 524 n.4, 490 A.2d 1008 (same), cert. denied, 196 Conn. 811, 495 A.2d 279 (1985), and cert. denied, 196 Conn. 810, 495 A.2d 279 (1985).

of the proceeds from this action would go to [the Freeman office], the dissolved company. They would go to [Freeman individually] . . . [thereby] [f]orcing creditors, including [the Pryor office], to undertake a heightened burden of proof to demonstrate that they can collect against [Freeman] personally."

In response, Freeman primarily argued that he had standing because he retained Gonzalez as a client prior to forming the Freeman office as a limited liability company and performed work on the matter while he operated as a sole proprietorship. See footnote 4 of this opinion. With respect to the applicability of *Saunders*, Freeman acknowledged that the Freeman office had dissolved prior to the commencement of this action and did not dispute that the Pryor office was a creditor of the Freeman office, but argued that "the language of [*Saunders*] . . . [d]oesn't say there can't be any prejudice to creditors. It says material prejudice." Freeman did not present any further evidence or argument to support his suggestion that allowing him to recover individually on a claim belonging to the company—and thereby retain funds that otherwise would be available to creditors of the Freeman office—would not materially prejudice the ability of creditors to recover from the Freeman office.

In their rebuttal argument, the defendants argued that, in light of the Freeman office's dissolved status, allowing Freeman to recover individually would materially prejudice creditors by reducing the amount available to satisfy the company's debts. Specifically, the defendants argued that "an inability to collect from [a limited liability company] that's been defunct [would result] in a necessity of doing some form of piercing of a corporate veil" in order to recover against Freeman individually.

On August 23, 2022, the court, *Sheridan*, *J.*, issued an order denying the motion to dismiss. The court noted that the general rule in Connecticut is that a member of a limited liability company may not bring a direct action in his or her individual capacity to recover for an injury to the company. The court further noted, however, that

the court in *Saunders* held that "'the trial court may permit the member of a single-member limited liability company to bring an action raising derivative claims as a direct action and may order an individual recovery if it finds that to do so will not (1) unfairly expose the company or defendants to a multiplicity of actions, (2) materially prejudice the interests of creditors of the company, or (3) negatively impact other owners or creditors of the company by interfering with a fair distribution of the recovery among all interested parties.' . . . [*Saunders* v. *Briner*, supra, 334 Conn.] 176." The court recognized that "[t]his is a very narrow exception that the Supreme Court has indicated 'would apply in rare circumstances, under which the plaintiff would have been entitled to the same relief by a simple amendment to the form of the pleading.' Id., 175 n.39." The court further noted that "[t]his exception was particularly appropriate under the circumstances in *Saunders*, 'in which both the parties and the court system expended time and resources to litigate these matters and the concept of a corporate injury that is distinct from any injury to [its sole member] approaches the fictional . . . .' Id., 174."

The court then concluded that "[t]he circumstances of the present case fit within the contours of this narrow exception. If [Freeman] [were] to amend his pleadings to add [the Freeman office] as a party plaintiff, there would be no question as to continuation of this lawsuit. Furthermore, as in *Saunders*, significant time and resources have been spent litigating this matter, and the distinction between [Freeman's] alleged economic loss as opposed to any economic loss to [the Freeman office] 'approaches the fictional.' [*Saunders* v. *Briner*, supra, 334 Conn.] 174 . . . . Accordingly, [Freeman] has standing to bring a direct action for damages based on alleged wrongs to the single-member limited liability company."[6] (Citation omitted.)

[6] On September 8, 2022, the defendants appealed from the trial court's denial of their motion to dismiss, but this court dismissed that appeal for lack of a final judgment.

Freeman did not move to substitute or add the Freeman office as a plaintiff at any point prior to trial.[7] The case was tried before the court, *Klau, J.*, on November 8 and 9, 2023. After Freeman rested his case, the defendants renewed their claim that the action should be dismissed on the basis that Freeman lacked standing to bring a direct action to recover for an injury allegedly suffered by the Freeman office. Judge Klau denied the defendants' motion on the ground that Judge Sheridan's previous conclusion that Freeman had standing was the law of the case. Thereafter, the defendants presented their case and the parties presented closing argument.

After the close of evidence and the presentation of closing arguments, on November 13, 2023, Freeman filed a "motion for permission to amend the complaint to conform to the evidence," in which he sought to add new counts to the complaint asserted by the Freeman office as a plaintiff. In that motion, Freeman noted that the defendants had entered into evidence during trial the Freeman office's Articles of Organization, dated September 16, 2015, and Certificate of Dissolution, dated January 11, 2019, and argued that he should be permitted to amend the complaint "to add [the Freeman office as] an additional plaintiff . . . consistent with the testimony and evidence provided." Freeman further argued that the Freeman office, which he referred to in the motion as his "alter ego," was "in the process of winding up pursuant to . . . General Statutes § 34-267a,"[8] and

---

[7] On July 18, 2023, Freeman moved for permission to amend the complaint to add breach of fiduciary duty counts against both defendants but did not request permission to add the Freeman office as a plaintiff. The court allowed Freeman's amendment over the defendants' objection but later granted the defendants' motion to strike the breach of fiduciary duty counts on the ground that Freeman failed to allege facts to support that there was a fiduciary relationship between Freeman and the defendants. Subsequently, Freeman filed a second amended complaint containing additional factual allegations pertaining to the breach of fiduciary duty claims. On October 23, 2023, the defendants again moved to strike the breach of fiduciary duty counts, but the court never ruled on that motion.

[8] General Statutes § 34-267a provides in relevant part: "(a) A dissolved limited liability company shall wind up its activities and affairs and

that "this lawsuit is a part of that statutorily mandated activity."[9] On November 17, 2023, the defendants filed an objection to the plaintiff's motion for permission to amend the complaint, in which they argued that it was improper to add a party by way of an amendment to the complaint, and that no evidence had been introduced during trial to support Freeman's contentions that the Freeman office was his alter ego or that the Freeman office was still in the process of winding up its affairs. On November 21, 2023, Freeman filed a reply to the defendants' objection, arguing that "Freeman individually and [the Freeman office] are for purposes of this litigation one [and] the same." Freeman further argued that allowing the amendment would not result in any prejudice because the defendants were aware of the Freeman office's existence and involvement in the Gonzalez matter prior to trial and the amendment would not change the nature

. . . the company continues after dissolution only for the purpose of winding up.

"(b) In winding up its activities and affairs, a limited liability company: (1) Shall: (A) Promptly after the dissolution, deliver to the Secretary of the State for filing a certificate of dissolution stating the name of the company and that the company is dissolved; and (B) discharge the company's debts, obligations and other liabilities, settle and close the company's activities and affairs, and marshal and distribute the assets of the company; and (2) may: (A) Preserve the company activities, affairs and property as a going concern for a reasonable time; (B) prosecute and defend actions and proceedings, whether civil, criminal or administrative; (C) transfer the company's property; (D) settle disputes by mediation or arbitration; and (E) perform other acts necessary or appropriate to the winding up. . . ."

[9] On November 15, 2023, two days after Freeman moved for permission to amend his complaint, Judge Klau ordered the parties to submit simultaneous briefs addressing, inter alia, "[w]hether [Freeman] acquired ownership of the assets of [the Freeman office] after [the Freeman office] was dissolved and, if so, whether those assets included the choses in action [that] [Freeman] has asserted in this case." Before the parties filed their briefs, the court granted Freeman's motion to amend the complaint to add the Freeman office as a plaintiff. The plaintiffs argued in their brief that, pursuant to General Statutes § 34-267f, Freeman was entitled to any assets of the Freeman office, including any damages recovered in this action, after it completed the winding up process. The defendants did not expressly address the question posed in the court's order, but argued that there was no evidence that the Freeman office was still in the process of winding up its affairs.

of the claims at issue. Judge Klau granted the motion to amend by summary order dated December 4, 2023. The defendants filed a motion for reconsideration of the order granting the motion to amend, which the court denied on January 8, 2024.

The court issued a memorandum of decision on May 20, 2024. In its decision, the court found that the Freeman office and the Pryor office had entered an oral contract to split the attorney's fees from the Gonzalez matter equally and that the defendants, therefore, did not breach that contract when the Pryor office issued a check to Freeman for $82,500. Rather than rendering judgment for the defendants, however, the court went on to state that its "findings concerning the terms of the parties' oral contract give rise to a minor quirk." Specifically, the court noted that, although "the plaintiffs have failed to prove the specific breach of contract claims they actually asserted . . . the court has found that a contract existed . . . [and] [u]nder the contract terms as found, the [plaintiffs are] entitled to $82,500 in attorney's fees." The court went on to conclude that, notwithstanding its determination that the defendants did not breach the contract because they actually had tendered the contractually agreed upon amount to Freeman, "the appropriate relief in this situation is to render judgment for [the Freeman office] on its breach of contract claim and award damages of $82,500." In a footnote, the court stated that, "[a]lthough Judge Sheridan previously determined that Freeman had standing to sue on behalf of [the Freeman office] for the purpose of winding up its affairs, because [the Freeman office] is a named plaintiff, any judgment to which Freeman would have been entitled will enter in favor of [the Freeman office], not Freeman personally." The defendants moved for reconsideration, and the court denied the defendants' motion on October 29, 2024. This appeal followed.

On appeal, the defendants claim that Judge Sheridan improperly denied their pretrial motion to dismiss because Freeman lacked standing to bring a direct action

to recover for an injury suffered by the Freeman office. The plaintiffs contend that Judge Sheridan properly concluded that, pursuant to *Saunders*, Freeman had standing to pursue a direct action. The plaintiffs further argue that, even if Freeman lacked standing in his individual capacity, his lack of standing was a "technical defect" that was cured when Judge Klau granted the posttrial motion to amend the complaint to add the Freeman office as a plaintiff.

We begin by setting forth the standard of review and legal principles applicable to a motion to dismiss for lack of standing. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Centrix Management Co., LLC* v. *Valencia*, 132 Conn. App. 582, 586, 33 A.3d 802 (2011). "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *Rubin* v. *Brodie*, 228 Conn. App. 617, 630–31, 325 A.3d 1096 (2024). Although the general rule is that a trial court's decision to deny a motion to dismiss is subject to de novo review; see *Centrix Management Co., LLC* v. *Valencia*, supra, 586; our Supreme Court has instructed that appellate courts are to apply the abuse of discretion standard when reviewing a trial court's application of the exception to the derivative action requirement adopted in *Saunders*. See *Saunders* v. *Briner*, supra, 334 Conn. 176 n.40.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause

of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Kloiber* v. *Jellen*, 207 Conn. App. 616, 621–22, 263 A.3d 952 (2021). "[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect. . . . [I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. [If], for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." (Emphasis omitted; internal quotation marks omitted.) *Bernblum* v. *Grove Collaborative, LLC*, 211 Conn. App. 742, 756, 274 A.3d 165, cert. denied, 343 Conn. 925, 275 A.3d 626 (2022).

"Our Supreme Court has explained that [d]ifferent rules and procedures will apply, depending on the state of the record at the time the motion [to dismiss] is filed. . . . More specifically, a court may be called on to determine whether subject matter jurisdiction is lacking on the basis of (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (Internal quotation marks omitted.) *Rubin* v. *Brodie*, supra, 228 Conn. App. 631. "When [deciding] a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, [a court] must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by [1] affidavits submitted in support of the motion to dismiss . . . [2] other types of undisputed evidence . . . and/or [3] public records of

which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Internal quotation marks omitted.) *Norris* v. *Trumbull*, 187 Conn. App. 201, 209–10, 201 A.3d 1137 (2019). In the present case, the allegations in the complaint were supplemented by documents submitted by the defendants in support of their motion to dismiss and the affidavit submitted by Freeman in support of his objection to the motion. "Thus, in conducting our . . . review, we limit ourselves to the factual record as it existed before the trial court, supplemented by any additional records of which we may take judicial notice." Id., 211.

I

We first address the defendants' claim that Judge Sheridan erred in denying their motion to dismiss. The defendants argue that Freeman lacked standing in his individual capacity because the claims sought to recover for an injury to the Freeman office, and the court improperly concluded that the exception established by our Supreme Court in *Saunders* applies to this case. We agree.

The general rule in this state is that a member of a limited liability company "may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company." (Internal quotation marks omitted.) *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 138, 161 A.3d 1227 (2017). "The distinction between a direct and derivative action turns on whether the alleged injury sustained . . . is peculiar to [the

member] alone or whether, by virtue of harm suffered by the company, it affects all of the [members] collectively. . . . In the latter situation, the plaintiff must proceed secondarily, deriving his rights from the [company] which is alleged to have been wronged." (Citation omitted; internal quotation marks omitted.) *Saunders* v. *Briner*, supra, 334 Conn. 168–69.

In *Saunders*, however, our Supreme Court recognized an exception to that general rule. Id., 174. In *Saunders*, the plaintiff brought claims in his individual capacity alleging that the defendants failed to repay a loan. Id., 165. The plaintiff funded the loan entirely with personal funds but provided the loan through a limited liability company of which he was the sole member. Id., 177. The defendants did not challenge the plaintiff's standing to pursue his claims as a direct action until their post-trial brief, and the trial court, without addressing the defendants' standing argument, found in favor of the plaintiff. Id., 166.

On appeal, the defendants in *Saunders* claimed that the plaintiff lacked standing to pursue a direct action because the company had provided the loan and the only injury to the plaintiff was derivative of the injury suffered by the company. Id., 165. The court framed the question on appeal as "whether to exempt single-member limited liability companies from the direct and separate injury requirements necessary to bring a direct action." Id., 167. In addressing that question, the court began by explaining that "the rule prohibiting shareholders from bringing a direct action to recover for a harm suffered by the corporation addresses the following policy rationales: (1) the protection of other shareholders and creditors of the company; (2) the avoidance of multitudinous litigation; and (3) the equal distribution of recovery to injured parties." Id., 169. As the court further explained, however, "in some circumstances, the policy reasons for requiring shareholders to bring an action on behalf of the corporation may not be present even though the action alleges in substance a corporate injury." Id.,

170. Relying on § 7.01 (d) of the American Law Institute's Principles of Corporate Governance,[10] the court concluded that, "when the unique circumstance arises in which the sole member of a limited liability company seeks to remedy a harm suffered by [the company], a trial court may permit such a member to bring his claims in a direct action, *as long as doing so does not implicate the policy justifications that underlie the distinct and separate injury requirement*." (Emphasis added.) Id., 167. Adopting the formulation set forth in § 7.01 (d) of the Principles of Corporate Governance, the court held "that the trial court may permit the member of a single-member limited liability company to bring an action raising derivative claims as a direct action and may order an individual recovery if it finds that to do so will not **(1)** unfairly expose the company or defendants to a multiplicity of actions, **(2)** materially prejudice the interests of creditors of the company, or **(3)** negatively impact other owners or creditors of the company by interfering with a fair distribution of the recovery among all interested parties." Id., 176.

Applying the newly enunciated standard, the court concluded that the plaintiff had standing to pursue a direct action. The court noted that, although the trial court had not expressly addressed the defendants' standing claim, "the trial court's exercise of jurisdiction implicitly relie[d] on and [was] supported by the three factors set forth by the American Law Institute." Id., 176–77. As the court explained, it was undisputed that the plaintiff was the sole member of the limited liability company that provided the loan and that he funded the loan with his

---

[10] Section 7.01 (d) provides in relevant part: "In the case of a closely held corporation . . . the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." 2 A.L.I., Principles of Corporate Governance: Analysis and Recommendations (1994) § 7.01 (d), p. 17.

personal funds. Id., 177. The court further explained that, because there was no claim "that any creditors of [the limited liability company] exist and would be prejudiced by the plaintiff's recovery . . . the trial court's decision to permit the plaintiff to recover directly will not lead to a multiplicity of actions or interfere with a fair distribution of recovery with respect to other members or creditors." Id. The court therefore concluded that "prohibiting the plaintiff, the sole member of [the company], from bringing a direct action would exalt form over substance [because] . . . *none of the reasons underlying the* [*distinct and separate injury*] *requirement* [*is*] *present*." (Emphasis added; internal quotation marks omitted.) Id.

Neither the Supreme Court nor this court have had occasion to address what is required in order for a plaintiff to establish that allowing a direct action will not "materially prejudice the interests of creditors" for purposes of the second *Saunders* factor. Id., 176. Courts in other jurisdictions that have adopted § 7.01 (d) of the Principles of Corporate Governance have observed that, in the case of a dissolved limited liability company with existing creditors, allowing a member of the company to recover individually risks causing prejudice to such creditors by diverting assets that should be available to pay creditor claims, in contravention of statutory dissolution and winding up procedures. As part of the winding up process after a limited liability company dissolves, the company is required to use its assets to pay creditors before distributing the remaining assets to its members. See General Statutes § 34-267f.[11] Thus,

[11] General Statutes § 34-267f provides in relevant part: "(a) In winding up its activities and affairs, a limited liability company shall apply its assets to discharge its obligations to creditors, including members that are creditors.

"(b) After a limited liability company complies with subsection (a) of this section, any surplus must be distributed in the following order, subject to any charging order in effect under section 34-259b: (1) To members and persons dissociated as members, an amount equal to the respective values of the contributions received by the limited liability company and not returned to each such member and dissociated

and as one court explained, allowing a member of a dissolved limited liability company with existing creditors to recover individually would "[allow the member] to circumvent the statutory distribution scheme and obtain a distribution [of company assets] before creditor claims are paid." *In re Patel*, 536 B.R. 1, 19–20 (Bankr. D.N.M. 2015) (concluding that exception to separate and direct injury requirement did not apply when company was dissolved because permitting individual recovery would circumvent statutory windup procedures); see also, e.*g.*, *Miller* v. *Up In Smoke, Inc.*, 738 F. Supp. 2d 878, 884 (N.D. Ind. 2010) (declining to allow direct action in case brought by shareholder of close corporation asserting individual claims and seeking judicial dissolution, concluding that, "[w]ere [plaintiffs] to recover directly, they would in effect jump to the front of the collection line and displace existing creditors for whom priority has already been established and recovery is uncertain"); *Barth* v. *Barth*, 693 N.E.2d 954, 958–59 (Ind. App. 1998) (allowing shareholder of close corporation to recover individually "would be inherently prejudicial to creditors of the corporation should the corporation be dissolved as a result of the lawsuit" because "[a] direct action would circumvent the rights of creditors to the extent that the damages awarded inured solely to [the shareholder], and not to the corporation").

In the present case, Freeman failed to demonstrate that allowing him to proceed with a direct action would not materially prejudice the Freeman office's creditors. As the party seeking to invoke the jurisdiction of the court, Freeman had the burden to establish that he had standing. See *Rubin* v. *Brodie*, supra, 228 Conn. App. 630–31. This means that, to assert a direct action under *Saunders*, it was Freeman's burden to present sufficient evidence at the motion to dismiss stage to support the conclusion that the three *Saunders* factors applied, including that

member; and (2) to members and dissociated members, in shares which are proportionate to their respective transferable interests, except to the extent necessary to comply with any transfer effective under section 34-259a. . . ."

allowing him to recover individually would not materially prejudice any creditors of the Freeman office. The record before the trial court at the time of the motion to dismiss indicated that the Freeman office had at least one creditor with outstanding claims—namely, the Pryor office, which had a separate action pending against the Freeman office for unpaid attorney's fees. Consequently, it was Freeman's burden to present evidence that allowing individual recovery would not prejudice the Pryor office. See *Wells Fargo Bank, N.A.* v. *Melahn*, 222 Conn. App. 828, 837, 307 A.3d 911 (2023) ("[i]f affidavits [or] other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings" (citation omitted)), cert. denied, 348 Conn. 951, 308 A.3d 1038 (2024). Freeman could have met his burden through the submission of evidence demonstrating that the Freeman office had sufficient assets to pay any outstanding claims, such that allowing him to retain the proceeds of any damages awarded in this action would not prejudice its creditors. See J. R. Burkhard, "LLC Member and Limited Partner Breach of Fiduciary Duty Claims: Direct or Derivative Actions?," 7 J. Small & Emerging Bus. L. 19, 57–58 (2003) ("[t]ypically, [the second American Law Institute factor is met] by a pleading that there are no existing creditors in need of protection or that the existing assets of the business are sufficient to protect the creditors' interests"). Freeman, however, did not present any such evidence in connection with his opposition to the motion to dismiss. Thus, the record does not support the conclusion that the *Saunders* exception applied in this case.

In its order denying the motion to dismiss, the trial court did not address the potential prejudice to the Freeman office's creditors that would result from allowing Freeman to proceed individually. Instead, the court concluded that this case fit within the *Saunders* exception because, "[i]f the plaintiff [were] to amend his

pleadings to add [the Freeman office] as a party plaintiff, there would be no question as to the continuation of this lawsuit," and, "as in *Saunders*, significant time and resources have been spent litigating this matter, and the distinction between the plaintiff's alleged economic loss as opposed to any economic loss to [the Freeman office] approaches the fictional." (Internal quotation marks omitted.) Neither of those factors, however, are by themselves sufficient to support the conclusion that Freeman had standing to pursue a direct action under the *Saunders* exception.

The court in *Saunders* expressly held that "a trial court may permit [the member of a single-member limited liability company] to bring his claims in a direct action, *as long as doing so does not implicate the policy justifications that underlie the distinct and separate injury requirement*." (Emphasis added.) *Saunders* v. *Briner*, supra, 334 Conn. 167. The court went on to explain that the three factor test it adopted is geared toward ensuring that those policy justifications are not implicated by allowing a direct action. See id., 170–71. The court instructed that "the trial court may . . . order an individual recovery *if it finds* that to do so will not (1) unfairly expose the company or defendants to a multiplicity of actions, (2) materially prejudice the interests of creditors of the company, or (3) negatively impact other owners or creditors of the company by interfering with a fair distribution of the recovery among all interested parties." (Emphasis added.) Id., 176. Thus, *Saunders* makes clear that a trial court may not permit the member of a single-member limited liability company to pursue derivative claims by way of a direct action unless the court determines that all three factors apply.

Although the court in *Saunders* noted in a footnote that the "limited exception would apply in rare circumstances, under which the plaintiff would have been entitled to the same relief by a simple amendment to the form of the pleading"; *Saunders* v. *Briner*, supra, 334 Conn. 175 n.39; and further noted that it was particularly

appropriate to permit the plaintiff in *Saunders* to pursue a direct action because "the parties and the court system expended time and resource to litigate these matters"; id., 174; the court did not indicate that those factors alone were sufficient to justify applying the exception. Rather, we construe those statements as additional considerations that may persuade a court to exercise its discretion to permit a direct action, but only if it first determines that allowing individual recovery would not expose the company to a multiplicity of actions, materially prejudice the interest of creditors, or interfere with the fair distribution of recovery among all interested parties. See id., 176. Because there was no basis in the record to conclude that allowing Freeman to assert direct claims would not materially prejudice the interests of the Freeman office's creditors, we conclude that the court abused its discretion in determining that the plaintiff was permitted to bring a direct action pursuant to the *Saunders* exception. We further conclude, therefore, that the court erred in denying the motion to dismiss.

II

We next address the plaintiffs' argument that Freeman's lack of standing was "cured" when the court granted his posttrial motion to amend the complaint. The plaintiffs argue that the court had discretion to permit an amendment to the complaint as long as it "[did] not change the cause of action or disadvantage the opposing party," and that "any alleged standing deficiency was procedural, not jurisdictional, and was properly resolved by the trial court's discretionary authority." We disagree.

Our resolution of the plaintiffs' claim is guided by our Supreme Court's decision in *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 327 Conn. 650, 176 A.3d 28 (2018). In that case, after the trial court had dismissed the claims of the plaintiff association for lack of standing, but not the claims brought by individual plaintiffs, the plaintiffs amended the complaint to cure the association's standing defect, and the

trial court subsequently denied the defendants' motion to dismiss the association's amended claims for lack of standing. Id., 683. On appeal, the defendants, relying on *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 186, 740 A.2d 813 (1999), and *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 131 Conn. App. 567, 575, 27 A.3d 467 (2011), rev'd in part on other grounds, 310 Conn. 797, 82 A.3d 602 (2014), claimed that the court improperly denied their motion to dismiss. In both of those cases, the reviewing court addressed the issue of whether the trial court had subject matter jurisdiction on the basis of the original complaint. See *Connecticut Associated Builders & Contractors* v. *Hartford*, supra, 186 (association lacked standing to challenge bidding procedures on municipal construction contract because, "[a]t the time of the filing of the complaint, the membership of the association included no project bidder"); *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, supra, 574 n.8 ("[t]he operative complaint for jurisdictional purposes is that included with the writ of summons . . . [because] [t]he lack of subject matter jurisdiction to render a final judgment cannot be cured retrospectively") (internal quotation marks omitted)). The defendants in *Rell* argued that the trial court "improperly denied their motion to dismiss the [association's] claims because, at the time that the original complaint was filed, the [association] had no parent members who would have had standing to bring this action in their own right, and a jurisdictional defect cannot be cured retroactively." *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, supra, 683–84.

In affirming the trial court's denial of the motion to dismiss in *Rell*, the court explained that *Connecticut Associated Builders & Contractors* and *Fairchild Heights Residents Assn., Inc.*, were "distinguishable . . . because, in both of those cases, the *original complaint* should have been dismissed because no plaintiff had standing. If the trial court had rendered a judgment of dismissal in those cases, the plaintiffs would not have been permitted to

cure the jurisdictional defects with subsequent pleadings because there no longer would have been any pending action in which to file them. In contrast, the original complaint in [*Rell*] was not dismissed when the trial court initially determined that the [association] lacked standing because the individual plaintiffs named in the original complaint still had standing . . . . Accordingly, the sole effect of dismissing the [association's] claims was to remove the [association] as a plaintiff. When the [association] subsequently gained associational standing to raise the claims, however, we can perceive no reason why it would not have been permitted to join the action as a plaintiff . . . ." (Emphasis in original.) Id., 685.

As we concluded in part I of this opinion, in the present case, the court lacked subject matter jurisdiction on the ground that the original complaint was insufficient because Freeman did not meet his burden to establish that he had standing to bring a direct action to recover for injuries to the Freeman office. Thus, at the time the court ruled on the motion to dismiss, there was no basis in the record to conclude that Freeman had standing, and the court should have dismissed the complaint at that point. As the court explained in *Rell*, "[i]f the trial court had rendered a judgment of dismissal [at that time], the plaintiffs would not have been permitted to cure the jurisdictional [defect] with subsequent pleadings because there no longer would have been any pending action in which to file them." Id.

We further note that, although the plaintiffs do not raise the issue, pursuant to General Statutes § 52-109, Freeman could have moved to add the Freeman office as a plaintiff to cure the standing defect before the court ruled on the motion to dismiss. Section 52-109 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." Our courts have recognized that § 52-109 provides a limited exception to the general

rule that, once the issue of a trial court's subject matter jurisdiction is raised, the court must rule on the motion on the basis of the existing complaint and cannot permit an amendment aimed at curing the jurisdictional defect because "any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996); see also, e.g., *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 729, 161 A.3d 630 (2017) ("[t]he plaintiff should not have been given the opportunity to replead because the court was without jurisdiction to permit a repleading"). As this court has explained, § 52-109, "as an exercise of the legislature's constitutional authority to determine [our court's] jurisdiction; [Conn. Const., art. V, § 1]; must be seen as an extension of that jurisdiction for the limited purpose of deciding a proper motion to substitute." (Internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 112, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012).

In the present case, however, Freeman did not take any action to add the Freeman office as a plaintiff until after the trial was completed, and even then did not move to add the Freeman office in accordance with § 52-109. Although this court and our Supreme Court have interpreted § 52-109 liberally in accordance with its "'ameliorative purpose'" to give trial courts, faced with a proper request, the authority to "'determin[e] if [an] action should be saved from dismissal by the substitution of plaintiffs'"; *Freese* v. *Dept. of Social Services*, 176 Conn. App. 64, 85, 169 A.3d 237 (2017); nothing in the language of § 52-109 or the case law interpreting it support the conclusion that a trial court, after improperly denying a motion to dismiss, may nevertheless preside over an entire trial over which it lacks subject matter jurisdiction and then allow a plaintiff to retroactively "cure" a standing defect by way of a motion to amend the complaint.[12]

---

[12] We note that, in *Kortner* v. *Martise*, 312 Conn. 1, 91 A.3d 412 (2014), our Supreme Court concluded that a potential standing defect was cured by the trial court's granting of a posttrial motion to substitute

Moreover, even assuming arguendo that § 52-109 permitted the trial court, having previously denied a motion to dismiss, to cure a standing defect by granting a motion to substitute a proper party, it would not alter the outcome of the present case. Here, the plaintiffs did not claim—and the trial court did not find—that the action was "commenced in the name of the wrong person as plaintiff . . . through mistake," as is required under § 52-109. See, e.g., *Fairfield Merritview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 554–55, 133 A.3d 140 (2016) (construing motion to amend complaint as motion to add party plaintiff pursuant to § 52-109 where plaintiff moved to amend approximately one month after filing complaint, defendants did not object to motion, and

in a case where the defendant never moved to dismiss the action and the issue of the trial court's jurisdiction was never brought to the trial court's attention. In *Kortner*, the plaintiff commenced the action in her capacity as her daughter's conservator and, when her daughter died after trial but before judgment entered, moved to substitute herself in her capacity as administratrix of her daughter's estate. Id., 11. The defendant never challenged the plaintiff's standing before the trial court or on appeal but, after oral argument, our Supreme Court, sua sponte, ordered the parties to file supplemental briefs addressing (1) whether the plaintiff had standing to commence the action in her capacity as conservator, and (2) if not, whether the standing defect was cured when the trial court granted the posttrial motion to substitute the mother in her capacity as administratrix. Id., 9 n.7. The court did not address whether the plaintiff had standing to commence the action in her capacity as conservator, concluding "that even assuming, arguendo, that the plaintiff did not have standing to bring the claim when she commenced the action in 2006, any defect was cured when she, as administratrix of [the daughter's] estate, was substituted as the plaintiff in 2010 and that substitution related back to the commencement of the action." Id., 14.

Because the potential standing issue in *Kortner* was never raised before the trial court, the court was never alerted to that issue, and the plaintiff had no occasion to attempt to cure it pursuant to § 52-109. In contrast, the defendants in the present case did move to dismiss the action, and Freeman did not move pursuant to § 52-109 to cure the standing defect by adding the Freeman office prior to the court ruling on the defendants' motion. Thus, if the court had granted the motion to dismiss—as we concluded in part I that it should have—it would have been required to dismiss the action, and "the plaintiffs would not have been permitted to cure the jurisdictional [defect] with subsequent pleadings because there no longer would have been any pending action in which to file them." *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, supra, 327 Conn. 685.

"under the undisputed facts and circumstances . . . there [was] no question that the . . . requirements [of § 52-109] were met"); *Rana* v. *Terdjanian*, supra, 136 Conn. App. 111 (court properly granted motion to substitute limited liability company as plaintiff before ruling on standing issue because "it is well within the authority of a court to permit a substitution of plaintiffs in lieu of dismissing an action *provided that the court determines that the conditions set forth in § 52-109 have been met*" (emphasis added)); cf. *Ion Bank* v. *J.C.C. Custom Homes, LLC*, 189 Conn. App. 30, 45, 206 A.3d 208 (2019) (plaintiff could not cure standing defect by filing amended complaint as of right pursuant to Practice Book § 10-59 because trial court "never considered or made a finding of whether the action was initiated by 'mistake,' a finding essential to evoking its discretionary authority to allow a substitution [or addition]"). As discussed previously, in his posttrial motion to amend,[13] Freeman did not assert that he commenced the action in his own name through mistake. Rather, Freeman claimed that the Freeman office was his "alter ego," and that he should be allowed to add the Freeman office as a plaintiff because the company was winding up its affairs and this action was part of that winding up process. Indeed, Freeman maintained throughout the trial—and the plaintiffs still maintain on appeal—that he had standing to bring a direct action, and the plaintiffs have never argued that this action was commenced in the name of the wrong plaintiff through mistake. In light of the basis for the motion to amend and Freeman's position throughout trial and the plaintiffs' position on appeal, there is nothing in the record to indicate that the court made the findings necessary to permit Freeman to add the Freeman office as a proper party pursuant to § 52-109. Accordingly, we conclude that Freeman's lack of standing was not cured by the

---

[13] Although the proper mechanism by which to cure a standing defect is a motion to add or substitute pursuant to § 52-109, our Supreme Court has treated a motion "captioned . . . as a request for permission to amend" as a motion to add pursuant to § 52-109 where it "clearly was, in its substance, a motion to add or substitute a party plaintiff." *Fairfield Merritview Ltd. Partnership* v. *Norwalk*, supra, 320 Conn. 554. Thus, the fact that Freeman captioned his motion as one for permission to amend is not controlling.

court's order granting his posttrial motion to amend the complaint.

The judgment is reversed and the case is remanded with direction to grant the defendants' motion to dismiss and to render judgment accordingly.

In this opinion the other judges concurred.